THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROY ODOM, Defendant-Appellant.

Fourth District   No. 15787

Opinion filed April 9, 1980.

MILLS, P. J., specially concurring.

Richard J. Wilson and Charles M. Schiedel, both of State Appellate Defender's Office, of Springfield, for appellant.

Patrick M. Walsh, State's Attorney, of Decatur (Gary J. Anderson and David Mannchen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

The defendant, Roy Odom, with his wife and two children, lived next door to Mrs. Mildred Park in a residential area in Decatur. A picket fence separated the properties; the fence, or at least portions of it, had

deteriorated. Mrs. Park's son, Dwayne, undertook the repair of the fence by putting in new sections of pickets. The new sections of pickets were painted before they were attached to the posts. A "no trespassing" sign was placed on the fence by the Parks. The fence was located entirely upon the property of Mrs. Park.

To make one existing survey pin more visible, Odom drove a pipe into the ground at the point of the survey pin. He then undertook to paint the pipe, and he did so with a spray can of black paint. The stake was two or three inches from the fence. Therein lies the origin of this criminal proceeding.

Mr. Odom either intentionally or accidentally got a substantial amount of black paint on the freshly painted white picket fence. He says it was an accident; Mrs. Park says no, and so does her son, Dwayne. The jury believed the Parks, and the defendant was convicted of criminal damage to property. The evidence in the case is to the effect that the damage done by the sprayed or splattered black paint was corrected by the purchase of one quart of white paint and repainting the fence. The repainting took about 1½ hours. That time span was probably lengthened by reason of the fact that the repainting had to be done from the Parks' side of the fence rather than Mr. Odom's side of the fence because the neighborly relations had apparently deteriorated.

The antisocial conduct proscribed here is criminal damage to property. The foregoing is a recitation of the facts, the conduct and the evidence adduced in the jury trial that followed. Thus, the defendant stands convicted of criminal damage to property, a violation of section 21—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 21—1). He appeals and raises the sole issue on appeal—the excessiveness of his sentence. He was sentenced to a term of imprisonment of 364 days. This was the sentence recommended by the assistant State's Attorney and imposed by the court. Is it excessive? We certainly think so.

At sentencing, the only aggravating or mitigating factor discussed by the court was defendant's prior record. This record includes four misdemeanor battery convictions, a 1975 conviction for aggravated assault, three misdemeanor convictions for disorderly conduct, and several traffic offenses. Defendant has been fined various small amounts and had been sentenced to short terms in the county jail. The sentencing judge stated his belief that defendant had not yet decided to obey the law and that "other things have not succeeded in keeping him out of trouble." For this reason, the court adopted the State's sentencing recommendation.

In coming to this result, however, the trial court failed to consider probation as an appropriate penalty for the defendant's conduct. Section 5—6—1 of the Unified Code of Corrections (Ill. Rev. Stat., 1978 Supp.,

ch. 38, par. 1005—6—1) provides that except where specifically prohibited, a court shall impose probation or conditional discharge unless it is of the opinion that imprisonment is necessary to protect the public or that probation or conditional discharge would deprecate the seriousness of the offense and would be inconsistent with the ends of justice. The record does not show that the trial court fairly considered probation as an alternative to the sentence imposed. A 364-day prison term clearly is unnecessary to protect the public from a man convicted of splattering paint on a neighbor's fence. Similarly, it is difficult to imagine how probation would minimize the seriousness of defendant's offense.

We believe the sentence imposed for this offense is excessive even in light of defendant's substantial prior record. Article I, section 11, of our constitution states that all penalties shall be determined according to the seriousness of the offense and with the objective of restoring the defendant to useful citizenship. A sentence of 364 days' imprisonment for splattering paint on a fence violates this mandate.

One purpose of criminal sanctions is to rehabilitate offenders. The sentence is also to deter other criminal conduct. If the object and purpose of our criminal laws are to be realized, the relationship between the conduct and the sentence or punishment has to be such as not to bring the system of the administration of criminal justice into serious question, if not disrepute. If the sentence imposed is so out of proportion to the offense as to beget public indignation, it is counterproductive. We conclude that this sentence is in that category. It is no doubt true that this defendant has had other offenses and it could well be that the trial court could ascertain a pugnacious attitude or other antisocial attitudes, but the bottom line is that the sentence imposed has to bear some relationship to the offense committed. That which transpired in this case is essentially the same thing that transpires all too frequently when boundary fences between neighbors, sometimes known as spite fences, get constructed. Thus, although the defendant has a prior record, the sentence imposed bears no reasonable relationship to the crime.

Conviction affirmed; sentence vacated; cause remanded for resentencing.

TRAPP, J., concurs.

Mr. PRESIDING JUSTICE MILLS, specially concurring:
One look at Odom's prior record tells us he would hardly win the "Friendliest Neighbor-in-the-Block Award."
In 10 years he racked up 23 misdemeanor and traffic convictions, had been fined 15 times, jailed on 9 different occasions, placed on probation

twice, and violated his probation once. At least nine of his past offenses involved physical violence, although none had apparently involved criminal damage to property.

The intentional defacing and spattering of 8 to 10 feet of a neighbor's fence is not to be tolerated, and people's property must be respected. The offense of criminal damage to property is not to be denigrated or disparaged; it is not insignificant.

I cannot agree with my colleagues that the legislative direction to impose probation has not been overcome on this record by the required showing that (1) imprisonment is needed to protect the public or (2) that probation would deprecate the seriousness of the conduct and be inconsistent with the ends of justice. Odom's litany of "antisocial conduct" neatly clears that hurdle in my view.

But the *degree* of the punishment—one year in jail—strikes me as excessive in view of the realistic damage inflicted in this case.

The proper standard of review—as set out in *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882—is whether the sentencing judge abused his discretion. I conclude that he did. And not only should he have another crack at sentencing, but I would not preclude any of the sentencing options found in his arsenal. I merely conclude that the punishment that *was* imposed is too great.

Therefore, I concur in the result reached by the majority.