THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LARRY DAVIDSON, Defendant-Appellant.

Second District   No. 2—83—1114

Opinion filed October 26, 1984.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Phyllis J. Perko and Raymond L. Beck, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE LINDBERG delivered the opinion of the court:

Defendant, Larry Davidson, appeals his six-year extended sentence imposed by the circuit court of Lake County for the offense of unlawful use of weapons. Defendant contends the trial court abused its discretion in imposing an extended-term sentence and in ordering that it be served consecutively with the sentence imposed upon revocation of his mandatory supervised release (MSR). Defendant also asserts that imposition of the extended-term sentence and the consecutive sentence constitutes an impermissible double enhancement. Since we conclude that the trial court did not abuse its discretion and that defendant's sentence does not constitute an impermissible double enhancement, we affirm.

Defendant was charged in three counts on November 3, 1983, with aggravated battery, battery and the unlawful use of weapons, and the battery counts were severed. Specifically, defendant was charged with commission of the offense of unlawful use of weapons by knowingly possessing a shotgun having a barrel less than 18 inches in length in violation of section 24—1(a)(7) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 24—1(a)(7)). The record discloses that defendant tendered an oral statement later reduced to writing that he possessed on October 2, 1983, a shotgun identified at trial as People's Exhibit No. 1 which was established to be a 12-gauge, single-action shotgun with an 11½-inch-long barrel. At trial, however, defendant denied possessing a shotgun that evening and stated that he confessed because the transcribing officer promised in return to release him from jail that day.

After a jury trial, defendant was found guilty of unlawful use of weapons. In a presentence probation department report expressly considered by the court at the sentencing hearing, defendant was described as a 19-year-old with a 10th-grade education, living with his family and unemployed for more than seven months prior to the incident. He had worked prior to that period of unemployment at two fast-food restaurants, but quit both jobs. The report continued that defendant had used alcohol and numerous drugs, including marijuana, cocaine and codeine since the age of 14 and attributed in part his criminal activity to his drug use.

The report listed no juvenile record, but did state that defendant pleaded guilty in January 1982 to voluntary manslaughter and was

sentenced to a three-year term in the Department of Corrections. Defendant was released on June 11, 1982, and his MSR term was scheduled to terminate on June 11, 1984. While on MSR, defendant was arrested and fined for disorderly conduct and misdemeanor theft. Defendant also had pending four misdemeanor charges, but the trial court stated it was not considering them in sentencing defendant.

The State requested at the hearing a minimum eight-year extended term because of his prior felony convictions, the character of the weapon involved, and defendant's lack of remorse. Defendant argued against imposition of an extended term, citing his mere possession and not use of the gun, his drug problems, his supportive family, and the probation officer's conclusion that defendant was a marginal candidate for probation. However, as the State highlights, the officer also reported that due to the nature of the crime and defendant's prior record, defendant might pose a threat to the community and characterized defendant's past manslaughter conviction and the instant weapons conviction as aggressive and violent.

Upon considering this evidence, the trial court on December 15, 1983, sentenced defendant to a six-year extended term to be served consecutively with defendant's term for revocation of his MSR in case number CF1712. According to Department of Corrections' records, eight months and nine days remain to be served on the MSR portion of defendant's sentence for the voluntary manslaughter conviction.

Defendant first contends the trial court erred in sentencing him to an extended term of imprisonment because the sentence is disproportionate to the nature and circumstances of the subject offense and is counterproductive to the objective of rehabilitation. Defendant does not contend that the trial court exceeded its statutory authority in imposing his sentence. As defendant concedes, the trial court was authorized on the basis of sections 5—5—3.2(b)(1) and 5—8—2(b)(5) to impose a minimum sentence of five years and a maximum sentence of 10 years for the instant Class 3 felony conviction. Ill. Rev. Stat. 1981, ch. 38, pars. 1005—5—3.2(b)(1) and 1005—8—2(b)(5).

Scope of review of sentence is limited (*People v. Smith* (1982), 110 Ill. App. 3d 286, 288, 442 N.E.2d 294, 296), and where, as here, the sentence is authorized by statute, the reviewing court will not reverse the sentencing decision unless the trial court has abused its discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153; *People v. Shumate* (1981), 94 Ill. App. 3d 478, 484, 419 N.E.2d 36, 42.) To be upheld, however, the sentence must measure the possibility of rehabilitation and be in proportion to the nature of the offense. (*People v. Smith* (1982), 110 Ill. App. 3d 286, 288, 442 N.E.2d 294, 296; *People v. Shu-*

*mate* (1981), 94 Ill. App. 3d 478, 484-85, 419 N.E.2d 36, 42.) Only if the sentence is greatly disproportionate to the nature of the crime will an abuse of discretion be found to exist. *People v. Smith* (1980), 81 Ill. App. 3d 764, 774, 401 N.E.2d 1017, 1024.

In support of this contention that his sentence is excessive, defendant argues that his chances for rehabilitation are good. However, defendant fails to cite any substantive evidence establishing his rehabilitative potential. Rather, defendant refers to his youth and states that his teenage values are not incapable of being improved. For the most part, defendant attempts to establish his rehabilitative potential by construing his prior misdemeanor and felony convictions in a positive light. While defendant downplays his two previous disorderly conduct convictions and his theft conviction as not indicative of a "hardened attitude of contempt for the law," these convictions do indicate his unwillingness to live within the requirements of the law. Also, as the State notes, the trial judge specifically stated that defendant did not display any remorse and the record demonstrates that defendant was contemptuous of the law enforcement officers upon his arrest. Defendant's commission of the instant crime while on MSR is further evidence that he will not be easily rehabilitated.

We also find unpersuasive defendant's contention that his convictions for voluntary manslaughter and unlawful use of weapons do not indicate to some extent defendant's propensity for violence. While the record is devoid of the facts resulting in the voluntary manslaughter conviction, inherent in the crime itself is some element of violence. Even if defendant's "bluffing" explanation is taken as true concerning the unlawful weapons charge, use of a potentially dangerous weapon in an offensive way to dissuade another from taking violent action in itself demonstrates violent conduct. Furthermore, the very nature of the weapon used—the sawed-off shotgun—makes unlikely any nonviolent use. We therefore agree with the State's contention that defendant's conviction involved a serious offense suggesting his predisposition toward violence.

The cases relied upon by defendant in which the reviewing court reduced the sentencing decision of the trial court are distinguishable. In *People v. Gokey* (1974), 57 Ill. 2d 433, the defendant was convicted of an unlawful use of weapons and received a one-year sentence. The supreme court reduced the sentence to three months for two reasons: (1) because the defendant testified that he was carrying $7,200 and therefore possessed the gun for protection and (2) because the term was greater than those commonly imposed even under more aggravated circumstances. (57 Ill. 2d 433, 439.) In contrast, defendant has

not cited evidence to this court that his term is excessive in relation to sentences imposed in other cases for the same offense. Also, as the State notes, the *Gokey* court did not refer to any prior criminal history of the defendant; here, the court specifically referred to defendant's voluntary manslaughter conviction and his violation of his MSR as aggravating factors.

In *People v. Odom* (1980), 82 Ill. App. 3d 853, 403 N.E.2d 297, also cited by defendant, the offender was convicted of criminal damage to property and was sentenced to a prison term of 364 days. His previous criminal record included four misdemeanor battery convictions, one conviction for aggravated assault, three misdemeanor convictions for disorderly conduct and several traffic offenses. In vacating the sentence as excessive, the appellate court concluded the trial court did not fairly consider probation. Here, in contrast, the court specifically rejected probation as a sentencing option open to defendant based upon the record adduced at the sentencing hearing. Also, the natures of the crimes in both cases are different. The painting of a neighbor's fence which occurred in *Odom* is nonviolent. As the court in *Odom* stated, "it is difficult to imagine how probation would minimize the seriousness of defendant's offense." (82 Ill. App. 3d 853, 855, 403 N.E.2d 297, 298.) On the other hand, probation could very likely minimize the seriousness of the violent offense of unlawful use of weapons. Finally, the *Odom* court found that the 364-day sentence bore no relation to the offense; the sentence imposed in the instant case in contrast is well within the five- to 10-year extended term authorized by statute. The prior offenses occurring within 10 years of the instant offense supports the imposition of the extended term. See *People v. Woods* (1984), 122 Ill. App. 3d 176, 182, 460 N.E.2d 880, 885.

■ The decision in *People v. Mick* (1980), 86 Ill. App. 3d 1022, 408 N.E.2d 1079, is likewise distinguishable. There, the appellate court reduced from five to three years the defendant's sentence for automobile theft, citing the defendant's youth, steady employment prior to the offense and his single nonviolent prior offense as factors suggestive of his rehabilitative potential. In contrast, defendant here was unemployed for seven months prior to the commission of the offense, and his previous record included a conviction for voluntary manslaughter. We therefore conclude the trial court properly sentenced defendant to a prison term of six years for the unlawful use of a weapon.

■ Defendant next contends that the trial court erred in ordering that he serve the six-year sentence consecutive to the sentence im-

posed when his MSR was revoked. Specifically, defendant contends the trial court failed to show that the consecutive terms were necessary to protect the public from further criminal activity by defendant. The statute provides that "[t]he court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—4(b).) Defendant principally relies upon one case to support his contention. In *People v. Griffin* (1982), 113 Ill. App. 3d 184, 446 N.E.2d 1175, the appellate court reversed the trial court's order sentencing defendant to four consecutive terms of five years for separate but related acts of theft. In reducing the sentence, the *Griffin* court examined both the nature and circumstances of the offenses and the history and character of the defendant. Specifically, the *Griffin* court noted that the crime was nonviolent and did not involve a weapon. Here, defendant's crime, while not resulting in injury, can hardly be characterized as nonviolent and did involve a weapon. The *Griffin* court also emphasized the thefts were consensual transactions (the defendant used stolen credit cards to purchase goods from the retail establishments); here, no consensual relationship existed between defendant and the complaining witness. In addition, unlike the defendant in *Griffin* who had completed a large number of college credit hours and was employed prior to the offense, defendant here had not completed high school and was unemployed at the time of the arrest. Finally, while in both cases the offenders were either on parole or probation at the time of the offenses, the initial offense in *Griffin* was submission of false information on an application for a firearm permit. This offense is far less serious than the voluntary manslaughter conviction involved in the instant case.

Absent an abuse of discretion by the trial court, a sentence may not be altered on review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154.) Based upon the distinctions enumerated above, *Griffin* does not require the conclusion that the trial court abused its discretion in sentencing defendant to consecutive terms. Furthermore, our review of the record indicates a consecutive sentence is necessary to protect the public. (See *People v. Pittman* (1982), 93 Ill. 2d 169.) In addition to the voluntary manslaughter and unlawful weapons conviction, further evidence of defendant's danger to society is shown by the two nol-prossed counts of battery and aggravated battery in which defendant was alleged to have struck the complaining witness with a base-

ball bat. These facts support affirmance of the trial court's order imposing a consecutive sentence.

A final argument raised by defendant is that the trial court erroneously doubly enhanced the duration of his imprisonment based upon a single prior felony. The essence of defendant's argument is that he received an extended term and a consecutive sentence because of his single prior conviction for manslaughter. Defendant relies upon *People v. Hobbs* (1981), 86 Ill. 2d 242, and *People v. Gresham* (1982), 104 Ill. App. 3d 81, 432 N.E.2d 654, as authority for his position. In *Hobbs,* the trial court allowed a prior felony theft conviction to serve both as a basis for enhancing a misdemeanor theft to a felony and for imposing an extended term. In reversing the sentence, the supreme court emphasized that absent the prior offense, the subject theft could not have constituted a felony; a prerequisite to the imposition of an extended term.

> "An extended term would have been permissible here, if, for example, the value of the liquor taken in 1979 had exceeded $150 so as to make its taking a felony. But it did not, and its taking became a felony under section 16—1(e) solely by reason of the 1978 felony conviction." *People v. Hobbs* (1981), 86 Ill. 2d 242, 245-46.

In *People v. Gresham* (1982), 104 Ill. App. 3d 81, 432 N.E.2d 654, the defendant's prior robbery conviction was used first to elevate the unlawful use of weapons offense from a Class A misdemeanor to a felony and then again to impose an extended-term sentence. Based upon the double enhancement, the reviewing court vacated the defendant's extended sentence.

Two factors distinguish *Hobbs* and *Gresham* from the case at bar. First, the trial court here necessarily considered more than simply the prior voluntary manslaughter conviction in imposing the consecutive sentence. The statute directs the court to consider the nature and circumstances of the offense and the history and character of the defendant. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—4(b).) Thus, the voluntary manslaughter conviction is only one of many factors which the trial court evaluated in determining that a consecutive sentence was "required to protect the public from further criminal conduct by the defendant." (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—4(b).) More importantly, unlike the circumstances in *Hobbs* and *Gresham*, here the consecutive sentence and extended term were imposed independent of each other. The extended term was imposed because of the prior felony, and the consecutive sentence was imposed to protect the public. In contrast, the extended sentences in *Hobbs* and *Gresham* could not

have been imposed without the prior felony first being used to enhance the initial misdemeanor to a felony. This is so because the extended term provision is triggered only if the instant offense is a felony. (See Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b)(1).) Here, the unlawful use of weapons was already a felony, and therefore, no enhancement of the instant offense was necessary to warrant imposition of an extended term.

While we conclude that imposition of the extended term and consecutive sentence sentence did not amount to double enhancement, a recent case arguably supports defendant's position. In *People v. Gray* (1984), 121 Ill. App. 3d 867, 460 N.E.2d 354, the defendant received an extended term for the felony offense of concealment of a homicidal death to run consecutively with his sentence for involuntary manslaughter and obstructing justice. The trial court imposed the extended term on the basis of section 5—5—3.2(b)(2) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b)(2)), which authorized the extended sentence if the offense was accompanied by exceptionally brutal or heinous behavior. The appellate court agreed that the trial court's sentence involved double enhancement:

> "In our opinion, this type of sentence constitutes an improper augmentation of the sentence. Concealment of a homicidal death is a Class 3 felony. The penalty for this offense is imprisonment with a minimum of two years and a maximum of five years. However, this sentence is doubly augmented by the extended term and also by being made consecutive to the other sentences. This result is completely unfair and excessive. In effect, it is closely analogous to double augmentation of a charge of battery by use of a weapon to result in aggravated battery and then by addition of the charge of armed violence." (121 Ill. App. 3d 867, 871, 460 N.E.2d 354, 356.)

The court also found that the trial court's sentence of 14 years violated the statutory proscription concerning maximum consecutive sentences. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—4(c)(2).) The court then proceeded to analyze separately whether the extended term and consecutive sentence were properly imposed. Concluding that they were not, the court vacated the extended term because the conduct was not especially brutal and heinous and vacated the consecutive sentence as not necessary to protect the public.

*Gray* is distinguishable from the instant case in that there, the consecutive, extended term was longer than the maximum allowed by statute. Here, the almost seven-year term is well within the five- to 10-year sentencing range allowed by statute. Also, the *Gray* court's

conclusion that the consecutive and extended terms constituted double enhancement is actually *dictum*. The court there concluded that neither the consecutive sentence nor the extended term was imposed properly; therefore, the *Gray* court was not required to conclude that the two terms constituted double enhancement. Even if its discussion was not *dictum*, however, the *Gray* court's failure to recognize that its facts, like those present here, are distinguishable from those in *Hobbs* and *Gresham* convinces us that defendant's sentence here was not impermissibly doubly enhanced. Therefore, we do not find *Gray* persuasive authority for defendant's position.

Accordingly, we affirm the order of the circuit court of Lake County which sentenced defendant to a six-year term for his unlawful use of a weapon to be served consecutively with his sentence imposed upon revocation of his mandatory supervised release.

Affirmed.

SEIDENFELD, P.J., and UNVERZAGT, J., concur.