THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LATONJA B. HEMPHILL, Defendant-Appellant.

Fourth District   No. 4—93—0141

Argued January 19, 1994.—Opinion filed March 31, 1994.

Daniel D. Yuhas (argued), of State Appellate Defender's Office, of Springfield, for appellant.

Charles Colburn, State's Attorney, of Jacksonville (Norbert J. Goetten, Robert J. Biderman (argued), and Linda Susan McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

Defendant, Latonja Hemphill, appeals from three consecutive sentences entered with respect to her convictions of two counts of retail theft (Ill. Rev. Stat. 1991, ch. 38, par. 16A—3(a)) and one count of theft (Ill. Rev. Stat. 1991, ch. 38, par. 16—1(a)(4)). Hemphill alleges her sentences are excessive. We disagree and affirm.

In July 1992, Hemphill, carrying her infant child in a car seat and accompanied by Jack Trumbo, Jr., went to Country Fair, a store

in Jacksonville. A store employee observed Trumbo placing three cartons of cigarettes in a shopping cart. However, when Trumbo and Hemphill went through the checkout lane, their purchase consisted of only two bananas. The store employee confronted Trumbo and Hemphill before they exited the store. A police officer arrived and asked Hemphill if he could look in the baby's car seat. Hemphill swung the car seat from side to side, with the baby in it. The police officer was ultimately permitted to examine the car seat and discovered the three cartons of cigarettes hidden under a blanket. Trumbo and Hemphill were arrested for retail theft.

Late in July 1992, Hemphill, carrying her infant in a baby basket and accompanied by Victor Branch, went shopping at Jack's Discount, another store in Jacksonville. This time Hemphill placed an answering machine and a stereo cassette player under a blanket in the baby basket. While Hemphill went to the service counter to return some merchandise, Branch, carrying the baby and baby basket, left the store. Branch was apprehended by a store employee. Branch and Hemphill were ultimately arrested for retail theft.

Again in July 1992, Hemphill approached Janis Williams, who was sitting on the front porch of a residence, and asked her for a glass of water. Williams went inside to get the water, leaving her purse on the porch. Hemphill took the purse and fled. The purse contained $50 cash. The purse was recovered; the cash was not. Hemphill was arrested for theft.

In September 1992, Hemphill pleaded guilty to the two counts of retail theft and one count of theft. The sentencing hearing was held in October 1992. The presentence investigation report submitted to the court reflected Hemphill was 22 years old at the time of the offenses. Hemphill's juvenile record included a finding of delinquency in 1985 as the result of her theft of an automobile. She was placed on six months' supervision, which was successfully completed.

Hemphill also has an adult record. In 1987, Hemphill was convicted of two counts of burglary and sentenced to 120 days' incarceration and 18 months' probation. While on probation, Hemphill committed the offense of retail theft. She was sentenced to 30 days' incarceration. Shortly thereafter, Hemphill was convicted of escape from a penal institution and sentenced to four years' incarceration. In 1991, after her release from prison, Hemphill was convicted of three counts of forgery and sentenced to $2^{1}/2$ years' probation. While on probation, Hemphill was convicted of passing bad checks in excess of $150 and sentenced to two years' probation. The three offenses in the present case were committed while Hemphill was on probation with respect to both the forgery and bad checks convictions.

A condition of Hemphill's probation with respect to the bad checks conviction was that she cooperate with the Treatment Alternatives to Street Crimes (TASC) program to obtain treatment for her crack cocaine addiction. TASC located a drug treatment facility in which Hemphill, who was then pregnant, could be placed. In this facility, Hemphill would be able to keep the infant with her after its birth. Hemphill failed to cooperate in completing the paperwork necessary to her admission. As the result, Hemphill did not enter the treatment facility. Hemphill was expelled from the TASC program. Hemphill's probation officer submitted a letter indicating Hemphill had been very uncooperative.

At the sentencing hearing Hemphill testified she committed her crimes in order to obtain money or goods which could be exchanged for drugs. Hemphill acknowledged her addiction to crack cocaine. She testified she wanted to enter treatment for her drug addiction and had telephoned and left several messages for her TASC representative; however, he did not wish to help her get treatment. Hemphill's mother testified she had supplied all of the information and paperwork necessary for Hemphill to enter the drug treatment program.

In rendering sentence, the trial court noted Hemphill had committed felony after felony. The court noted when Hemphill had been before the court for sentencing with respect to the bad checks conviction, the State requested a sentence of imprisonment; however, the court gave her the opportunity to be placed on probation and get treatment for her drug addiction.

The sentence imposed upon a defendant is a matter of judicial discretion. The circuit court is in the best position to view defendant's credibility, demeanor, general moral character, social environment, habits, and age. (See *People v. Duckett* (1974), 56 Ill. 2d 432, 452, 308 N.E.2d 590, 601.) The trial court is, therefore, better able to fashion a sentence tailored to the particular circumstances and acts of the defendant. (See generally *People v. Steppen* (1985), 105 Ill. 2d 310, 323, 473 N.E.2d 1300, 1307; *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884.) The circuit court's decision with respect to sentencing is entitled to great weight and will not be disturbed absent an abuse of discretion.

The sentence for retail theft of property having a value of less than $150, as well as for theft of property having a value of $300 or less, is the sentence for a Class A misdemeanor, *i.e.*, a term of imprisonment of less than one year. (Ill. Rev. Stat. 1991, ch. 38, pars. 16A—10(1), 16—1(b)(1), 1005—8—3(a)(1).) However, where, as in the present case, the defendant has previously been convicted of bur-

glary, the theft or retail theft may be elevated from a Class A misdemeanor to a Class 4 felony. (Ill. Rev. Stat. 1991, ch. 38, pars. 16—1(b)(2), 16A—10(2).) The sentence for a Class 4 felony is a term of imprisonment of not less than one nor more than three years. Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(a)(7).

Moreover, the trial court, in the exercise of its discretion, could have sentenced Hemphill to an extended term. A defendant who has previously been convicted of the same or a greater class felony may be sentenced to an extended term. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—3.2(b)(1).) Since Hemphill had previously been convicted of forgery, a Class 3 felony (Ill. Rev. Stat. 1991, ch. 38, par. 17—3(d)), she was eligible for an extended-term sentence. The extended-term sentence for a Class 4 felony is a term of imprisonment of not less than three nor more than six years. Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—2(a)(6).

Thus, Hemphill could have been sentenced to a term of imprisonment of one to three years with respect to each of the convictions of retail theft as well as the theft conviction. Had the court, in its discretion, determined extended-term sentences to be appropriate, Hemphill could have been sentenced to a term of imprisonment of three to six years in each instance.

In the present case, given the factors in aggravation, the trial court did not abuse its discretion in sentencing Hemphill to 2$^1$/2 years' imprisonment with respect to *each* of the convictions. Most notably, Hemphill has an extensive prior criminal record and committed the instant offenses while on probation. (Ill. Rev. Stat. 1991, ch. 38, pars. 1005—5—3.2(a)(3), (a)(12).) Moreover, the trial court found the sentences were necessary to deter others. Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—3.2(a)(7).

Nor did the trial court err in ordering the sentences to be served consecutively. The court may order sentences to be served consecutively, where, having regard to the nature and circumstances of the offense and the history and character of the defendant, such a term is required to protect the public from future criminal conduct by the defendant. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—4(b); *Steppen*, 105 Ill. 2d at 322-23, 473 N.E.2d at 1306-07.) The determination of whether a consecutive term is warranted lies within the discretion of the trial court and such determination will not be disturbed absent an abuse of discretion. (*People v. Harris* (1991), 220 Ill. App. 3d 31, 32, 580 N.E.2d 903, 904.) A reviewing court should not substitute its judgment or preference as to punishment for that of the sentencing court. The trial court is ordinarily best situated to tailor a sentence to the needs of the case. It balances the appropriate factors in

imposing sentence, and the exercise of this discretion should not be altered upon review absent abuse of that discretion. *People v. Anderson* (1991), 211 Ill. App. 3d 140, 144, 569 N.E.2d 1178, 1182.

Hemphill argues the consecutive sentences, $7^1/_2$ years in the aggregate, are excessive because the property taken totalled less than $300. Hemphill directs our attention to *People v. Odom* (1980), 82 Ill. App. 3d 853, 403 N.E.2d 297. In *Odom*, this court vacated the sentence of a defendant sentenced to 364 days' imprisonment with respect to a conviction of criminal damage to property, where the offense consisted of the splattering of paint on a neighbor's fence. This court found the sentence to be so out of proportion to the offense committed that it would bring the system of the administration of criminal justice into question if not disrepute. This court additionally concluded the prison term was unnecessary to protect the public from a man convicted of splattering paint on a neighbor's fence and probation would not deprecate the seriousness of the defendant's offense. *Odom*, 82 Ill. App. 3d at 854-55, 403 N.E.2d at 298.

We cannot apply the reasoning used in *Odom* to the present case. Hemphill was convicted of three theft-related offenses. Her previous history presents a pattern of stealing from others, whether by theft or deception. The trial court could have reasonably determined consecutive sentences were necessary to protect the public from further criminal conduct by Hemphill. Moreover, the sentencing of Hemphill, a repeat offender, to a total of $7^1/_2$ years' imprisonment will not bring the criminal justice system into question or beget public indignation.

We find the present case bears closer resemblance to *Anderson* than to *Odom*. Anderson, a cocaine addict, was 33 years old at the time of sentencing on a retail theft conviction. Her prior record consisted of one juvenile adjudication, one traffic violation, a burglary conviction, a misdemeanor theft conviction, and five retail theft convictions. Five of her prior offenses were felonies. At the time of sentencing, Anderson was serving consecutive terms of four years' and two years' imprisonment for retail theft. (*Anderson*, 211 Ill. App. 3d at 141, 569 N.E.2d at 1180.) The trial court sentenced Anderson to a six-year extended-term sentence, to be served consecutively to her other consecutive sentences. (*Anderson*, 211 Ill. App. 3d at 142, 569 N.E.2d at 1180.) On appeal, we affirmed, noting Anderson's extensive prior record and the lack of meaningful attention to overcoming her drug addiction. *Anderson*, 211 Ill. App. 3d at 144, 569 N.E.2d at 1182.

Hemphill had numerous prior convictions and committed offenses while on probation for other offenses. The trial court found Hemphill was incorrigible and could not be trusted. When given the

opportunity to obtain treatment for her drug addiction, Hemphill did not.

The consecutive sentences imposed by the circuit court of Morgan County are affirmed.

Affirmed.

COOK and STEIGMANN, JJ., concur.