THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GEORGE E. HINDSON, Defendant-Appellant.

Second District   No. 2—97—0137

Opinion filed December 4, 1998.

468

G. Joseph Weller and Linda A. Johnson, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (Martin P. Moltz and Richard S. London, both of State's Attorneys Appellate Prosecutor's Office, of counsel), and Robert M. Podlasek, of Tews, Theisen & Theisen, of Chicago, for the People.

PRESIDING JUSTICE GEIGER delivered the opinion of the court:

Following a jury trial, the defendant, George Hindson, was found guilty of 10 counts of aggravated criminal sexual assault (720 ILCS 5/12—14(b)(1) (West 1994)) and 1 count of aggravated criminal sexual abuse (720 ILCS 5/12—16(c)(1)(i) (West 1994)) and was sentenced to 72 years' imprisonment. On appeal, the defendant argues that (1) the trial court erred in admitting certain hearsay testimony during the trial; and (2) his sentence was excessive.

On May 1, 1996, the defendant and his wife, Edna Hindson, were charged by indictment with 43 counts of predatory criminal sexual assault of a child (720 ILCS 5/12—14.1 (West 1996)), 2 counts of aggravated criminal sexual abuse (720 ILCS 5/12—16(c)(1)(i) (West 1994)), and 1 count of aggravated battery (720 ILCS 5/12—4(c) (West 1994)). The charges of predatory criminal sexual assault of a child were later amended to charges of aggravated criminal sexual assault (720 ILCS 5/12—14(b)(1) (West 1994)). On August 21, 1996, the defendant was subsequently charged with an additional six counts of aggravated criminal sexual assault. Specifically, the indictments alleged that the defendant and Edna had performed numerous sex acts upon Edna's 10-year-old daughter, K.M., and upon the couple's 8-year-old son, R.C. Edna pleaded guilty and agreed to testify against the defendant in exchange for a sentence of 6 to 30 years' imprisonment.

On July 12, 1996, pursuant to section 115—10 of the Code of Criminal Procedure of 1963 (the Code) (725 ILCS 5/115—10 (West 1996)), the trial court conducted a hearing to determine the admissibility of certain hearsay statements made by K.M. and R.C. At the hearing, Kathy Mountford testified that she became a foster parent for K.M. and R.C. on September 11, 1995. Mountford testified that the children talked to her about the numerous acts of sexual abuse committed upon them by the defendant and their mother. Mountford testified that the first of these conversations took place in April 1996, shortly before Easter. Mountford related that this conversation occurred after she called one of her sons "my dear." K.M. complained about this comment, stating that she did not like this name because the defendant used to call her that. K.M. also told Mountford that the defendant called her "little princess" when he was drunk and that he would touch her.

Mountford further testified that, on April 8, 1996, R.C. told her that the defendant made him and his sister watch movies in which people were wearing no clothing and that his mom and the defendant would perform the acts portrayed in the movies upon him and his sister. Specifically, R.C. explained that in the movies, "the woman

would put her mouth on the man's d*** and the man would put his d*** in the girl's private parts."

Mountford also testified that, in the fall of 1995, she had discussions with K.M. concerning her personal safety. At this time, K.M. told Mountford that she was fearful of heavily set bald men, as these were the physical characteristics of the defendant. At this time, K.M. also stated that the defendant would "come in and do things and touch [her]." Mountford also testified that, in January or February 1996, K.M. had also told her that K.M.'s mother and the defendant had "touched" her and had told her to touch them in "their private areas." Mountford testified that, on June 3, 1996, K.M. told her that she had heard her parents say that "if [they] kept doing this, [they] could get [K.M.] pregnant." Mountford further testified that, on June 9, 1996, K.M. told her about other specific sexual acts that the defendant had performed upon her.

At the close of the hearing, the trial court admitted into evidence most of the statements made to Mountford by K.M. and R.C. However, the trial court denied the admission of testimony relating to those comments K.M. made to Mountford in June 1996, finding that they were unreliable because they were made too far into the ongoing investigation against the defendant.

On October 7, 1996, the case proceeded to a jury trial. At trial, K.M. testified that, during the summer of 1995, she was 10 years old and lived in Antioch with R.C., her mother, and the defendant. During this time, she testified that the defendant touched her in ways that she did not like to be touched. She testified that the defendant touched her breasts, vagina, and butt. She testified that the defendant placed his mouth on her vagina and at times would insert various things into her vagina, including his penis, a dildo, a knife, and his fingers. She testified that the defendant would touch her breasts with his hands or his mouth. She also stated that the defendant inserted his fingers into her butt.

K.M. further testified that the defendant made her perform sexual acts on other members of the family. The defendant made her bite him on the chest or rub his penis with her hands or put it in her mouth. The defendant also made her touch her brother's penis with her mouth and hands and made her brother touch her breasts and vagina. Furthermore, K.M. testified that the defendant made her touch her mother's vagina and breasts with her hands, and her mother would perform the same acts on her. K.M. testified that she performed these acts because she was scared of the defendant and because he had told her that "something would happen to [her] mom or [her] brother" if she did not.

R.C. testified that, during the summer of 1995, he was eight years old and lived with his sister, mother, and the defendant. R.C. testified that, during this time, the defendant touched R.C.'s "wiener" with his hands and butt. R.C. testified that the defendant also made him touch the defendant's "wiener" with his mouth, hands, and butt. R.C. testified that the defendant "put his wiener up [R.C.'s] butt," and R.C. put his "wiener" in his father's butt as well. R.C. also testified that his mother made him touch her breasts, vagina, and butt and place his mouth on her vagina. R.C. stated that his mother made him put his "wiener" in her vagina, touch her breasts with his hands, and put his "wiener" up her butt. R.C. further testified that the defendant made K.M. touch his "wiener" with her hands, mouth, and vagina. R.C. stated that his parents told him that if he did not perform these acts, they would hurt him and his sister.

Edna Hindson, the defendant's wife, testified that she had pleaded guilty and had agreed to testify truthfully in exchange for a sentence of 6 to 30 years' imprisonment. Edna testified that the family had moved to Antioch in the latter part of July 1995. During this time, the defendant would get up during the night, awaken her, and then awaken the children. At this time, the defendant would play with K.M.'s breasts, stick his finger in her vagina, and have K.M. put her mouth on his penis and her finger in his anus. Edna also said that on one occasion the defendant had put his penis in K.M.'s vagina. Edna also testified that the defendant told her (Edna) to suck R.C.'s penis and to put her finger up his butt. The defendant then instructed R.C. to pinch Edna's breasts, lick her vagina, and put his penis in her vagina. The defendant also directed K.M. to put her finger in Edna's vagina and anus, to lick her vagina, and to pinch her breasts.

Edna further testified that the defendant told the children to perform sexual acts on each other. She observed R.C. place his mouth on K.M.'s vagina, insert his penis in K.M.'s vagina, and place his finger in K.M.'s anus. She also observed K.M. touch R.C.'s penis with her hand and her mouth and place her fingers in R.C.'s anus. On one occasion, Edna testified that she urinated into the defendant's mouth, and the defendant then told the children to do the same to each other, which they did. Edna testified that she and the children performed all of these acts because they were afraid of what the defendant would do to them. Edna did not testify as to the specific dates on which these actions occurred; however, she did state that some of the abuse occurred on the night of August 26, 1995, through the morning of August 27, 1995.

On cross-examination, Edna admitted that, late in July or early in August 1995, she twice had sex with the children in the afternoon

when no one else was present. Edna testified that she and the defendant performed sexual acts on the children only over a period of one month, although she did not inform the police of this abuse until her arrest in April 1996.

Mountford also testified at trial. Mountford testified in a manner consistent with her testimony at the section 115—10 hearing. However at trial, Mountford did provide more details of some of the comments that K.M. and R.C. made to her. Mountford testified that, in September 1995, K.M. had told her that the defendant "would touch her all over in places where he shouldn't and made her feel uncomfortable." Mountford also testified that, in January or February 1996, K.M. told her that her parents told her that it was okay for K.M. and R.C. to sleep in the same bed and take baths together and touch each other, and that her parents touched both of them, stating that "everybody touched everybody."

Dr. Emalee Flaherty, a pediatrician, testified that she examined K.M. and R.C. on April 11, 1996. Dr. Flaherty testified that K.M.'s anus was dilated 15 millimeters, which was a "significant" amount and a sign of sexual abuse. Dr. Flaherty testified that there was no indication of abuse in K.M.'s genital area. Dr. Flaherty testified that she had no opinion as to whether R.C. had been sexually abused. Dr. Flaherty stated that she observed injuries on R.C. that could have been caused by sexual abuse or could have been caused by something else.

Following deliberations, the jury found the defendant guilty of 10 counts of aggravated criminal sexual assault and 1 count of aggravated criminal sexual abuse. On November 19, 1996, following the denial of the defendant's posttrial motion, the trial court conducted a sentencing hearing. At the hearing, the trial court considered, among other evidence, the defendant's presentence report. This report indicated that the defendant was currently on probation for a 1995 conviction of aggravated criminal sexual abuse. The victim in that case had also been his stepdaughter, K.M. The report also indicated that Gerald Blaine, the associate director of the Community Youth Network, had conducted a sexual offender evaluation of the defendant. Blaine's evaluation indicated that the defendant was not amenable to treatment and that he was in the highest risk category to engage in future sexually deviant behavior. Blaine further stated that, in his experience of evaluating several hundred sex offenders, the defendant was one of the 10 most dangerous that he had ever encountered.

At the close of the sentencing hearing, the trial court discussed its findings as to the applicable aggravating and mitigating factors. In mitigation, the trial court noted that the defendant had attained his

GED, had some college education, was employed, and had served in the military. In aggravation, the trial court noted that the defendant was on probation at the time of the instant offenses and held a position of trust over the victims. The trial court also found that the defendant exhibited little rehabilitative potential. The trial court noted the severity and the repetitive nature of the defendant's acts as well as the evaluation in the presentence report, which indicated that the defendant was considered a high risk to "reoffend." The trial court further found that, in order to protect the public, consecutive sentences were appropriate under section 5—8—4(b) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5—8—4(b) (West 1996)). The trial court proceeded to sentence the defendant to a total of 72 years' imprisonment.

The trial court further ruled that the "truth-in-sentencing" provisions of the Unified Code (730 ILCS 5/3—6—3(a)(2)(ii) (West 1996)) were applicable only as to count LI, which charged that the defendant had placed his penis in K.M.'s mouth on August 27, 1995. The trial court sentenced the defendant to 30 years' imprisonment on this count. Following the denial of his motion to reconsider sentence, the defendant filed a timely notice of appeal.

■ The defendant's first contention on appeal is that the trial court erred in allowing Mountford's testimony relating to the hearsay statements of K.M. and R.C. Specifically, the defendant contends that the trial court erred in finding that Mountford's testimony met the reliability requirement of the section 115—10 hearing. Furthermore, the defendant contends that he was prejudiced by Mountford's testimony at trial because it differed substantially from her testimony at the section 115—10 hearing. At the outset, we note that the defendant has waived this issue due to his failure to object to Mountford's testimony in his posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988); *People v. Dugan*, 237 Ill. App. 3d 688, 696 (1992). In order to preserve an argument for appeal, both an objection at trial and a written posttrial motion raising the issue are required. *Enoch*, 122 Ill. 2d at 186. Although the defendant objected to Mountford's testimony at the section 115—10 hearing and at trial, he did not raise the issue in his posttrial motion.

When a defendant has not properly preserved his claim of error, appellate review is limited to the determination of whether the statement was so prejudicial as to amount to plain error under Illinois Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)). *People v. Glass*, 239 Ill. App. 3d 916, 922 (1992). The plain error doctrine may be invoked in criminal cases to review an error that has not been properly preserved if either the evidence was closely balanced or the error was

of such magnitude that the defendant was denied a fair trial. *People v. Petitt*, 245 Ill. App. 3d 132, 139 (1993).

Here, the evidence was not closely balanced. K.M. testified that the defendant touched her breasts, vagina, and butt with his mouth, hands, and penis. R.C. testified that the defendant had engaged in oral and anal intercourse with him. This testimony was corroborated by the victims' mother, who testified that she had participated in and witnessed the defendant's abuse of the children. Dr. Flaherty also corroborated K.M.'s testimony by testifying that K.M. had suffered injuries to her anus consistent with sexual abuse. Thus, in view of the competent testimony of the victims regarding the elements of the offenses of which the defendant was convicted, as well as the other corroborating testimony, we do not believe that the evidence was so closely balanced that the admission of Mountford's conversations with K.M. and R.C. constituted plain error. See *People v. Jahn*, 246 Ill. App. 3d 689, 706 (1993).

Moreover, since both K.M. and R.C. testified at trial, we do not believe that the trial court's admission of Mountford's hearsay testimony deprived the defendant of a fair trial. See *Jahn*, 246 Ill. App. 3d at 702. The admission of hearsay testimony is harmless if such testimony is fully corroborated by the declarant's testimony at trial and the defense has the opportunity to cross-examine the declarant. *Glass*, 239 Ill. App. 3d at 923.

In *Glass*, the defendant argued that the trial court committed reversible error by failing to conduct a section 115—10 hearing on a certain witness's hearsay testimony. 239 Ill. App. 3d at 921. Although the defendant objected to the witness's hearsay testimony at trial, he failed to raise the issue in a posttrial motion. *Glass*, 239 Ill. App. 3d at 922. On appeal, the reviewing court found that the defendant had waived the issue and that the alleged error did not rise to the level of plain error. *Glass*, 239 Ill. App. 3d at 922-23. The court noted that at trial the witness's hearsay testimony was admitted only after the child victim testified as to the defendant's abuse. *Glass*, 239 Ill. App. 3d at 923. The court concluded that, although the trial court erred in not conducting a section 115—10 hearing, such error was harmless because the victim's direct testimony at trial corroborated the witness's hearsay testimony. *Glass*, 239 Ill. App. 3d at 923. Accord *Dugan*, 237 Ill. App. 3d at 696 (defendant's objection to a witness's section 115—10 hearsay testimony becomes moot where the child victim testifies at trial); *People v. Branch*, 158 Ill. App. 3d 338, 341 (1987) ("Once the victim testifies and is subject to cross-examination, the rationale for the rule against hearsay evidence virtually disappears").

In the case herein, K.M.'s and R.C.'s testimony at trial substan-

tially corroborated Mountford's hearsay testimony concerning the alleged abuse. Moreover, both K.M. and R.C. were subject to cross-examination. We therefore conclude that, for purposes of plain error analysis, the defendant was not unduly prejudiced by the admission of Mountford's testimony. See *Jahn*, 246 Ill. App. 3d at 702; *Glass*, 239 Ill. App. 3d at 923.

The defendant next challenges the propriety of the sentence imposed by the trial court. As noted above, the trial court sentenced the defendant to a total of 72 years' imprisonment. In relation to his sentence, the defendant raises the following issues: (1) the trial court failed to give sufficient consideration to all of the evidence presented in mitigation and his rehabilitative potential; (2) his sentence was disproportionate to the nature of the offense in violation of the eighth amendment to the United States Constitution (U.S. Const., amend. VIII) and in violation of article I, section 11, of the Illinois Constitution (Ill. Const. 1970, art. I, § 11); and (3) the truth-in-sentencing provisions of the Unified Code are unconstitutional.

The defendant's first contention of error concerning his sentence is that the trial court gave insufficient consideration both to the evidence in mitigation presented at the sentencing hearing and to his rehabilitative potential. Specifically, the defendant argues that the trial court failed to consider that his actions did not occur over a lengthy period of time and that, other than his 1995 conviction of aggravated criminal sexual abuse, he did not have a significant criminal history. The defendant also contends that he was not a danger to the community and that the trial court erred in finding that he could not be rehabilitated.

■ The trial court has great discretion in imposing a sentence; consequently, a sentence within the statutory range will not be reduced on appeal absent an abuse of that discretion. *People v. Jones*, 168 Ill. 2d 367, 373-74 (1995). We may not substitute our judgment for that of the trial court merely because we might have weighed the sentencing factors differently. *People v. Streit*, 142 Ill. 2d 13, 19 (1991). The seriousness of the offense or the need to protect the public may outweigh mitigating factors and the goal of rehabilitation. *People v. Gagliani*, 251 Ill. App. 3d 1019, 1029 (1993).

■ Based upon our review of the record, we conclude that the trial court considered all of the applicable aggravating and mitigating factors in sentencing. At the sentencing hearing, the trial court stated that it had considered the presentence investigation report as well as both the statutory and nonstatutory factors in aggravation and mitigation. From such a statement, we may assume that the trial court considered all of the factors in mitigation that the defendant now as-

serts on appeal. See *People v. Madura*, 257 Ill. App. 3d 735, 740 (1994) (where evidence of mitigation was presented before the trial court, it is presumed that the sentencing judge considered the evidence). Moreover, we note that a sentencing court is not obligated to recite and assign a value to each factor in mitigation and aggravation on the record. *Madura*, 257 Ill. App. 3d at 740-41.

We also believe that the record supports the trial court's finding that the defendant was a danger to society and that he showed little potential for rehabilitation. As noted by the trial court, the defendant's actions were both severe and repetitive. Moreover, the defendant was on probation for a similar offense at the time he committed the instant crimes. Indeed, the presentence report specifically found that the defendant was at a high risk to "reoffend."

As all of the trial court's findings at the sentencing hearing are supported by the record, we do not believe the trial court abused its discretion in sentencing the defendant. See *People v. Rivera*, 212 Ill. App. 3d 519, 527 (1991). The statutory penalty range for aggravated criminal sexual assault, a Class X felony (720 ILCS 5/12—14(d) (West 1994)), is from 6 to 30 years' imprisonment (730 ILCS 5/5—8—1(a)(3) (West 1994)). Moreover, an extended-term sentence of 30 to 60 years' imprisonment may be imposed if the trial court finds certain aggravating factors present. 720 ILCS 5/12—14(d) (West 1994); 730 ILCS 5/5—8—2(a)(2), 5—5—3.2(b)(5) (West 1994). Additionally, the sentencing court may impose consecutive sentences on the multiple convictions if it determines that such a term is required to protect the public from further criminal conduct by the defendant. 730 ILCS 5/5—8—4(b) (West 1994). However, the aggregate of the consecutive sentences on multiple Class X felonies shall not exceed 120 years' imprisonment. 730 ILCS 5/5—8—2(b)(2), 5—8—4(c)(2) (West 1994). As the defendant's total sentence of 72 years' imprisonment was within the range permitted by statute, and as the trial court did not otherwise abuse its discretion, we decline to disturb the sentence. See *Jones*, 168 Ill. 2d at 373-74.

We next consider the defendant's constitutional arguments. The defendant first argues that his sentence is disproportionate to his offenses in violation of the eighth amendment to the United States Constitution (U.S. Const., amend. VIII). Specifically, the defendant argues that his sentence is unconstitutionally disproportionate because others who have been convicted of similar or even more serious offenses have rarely received the length of sentence imposed in the instant case. The defendant also contends that his sentence is disproportionate to his offenses in violation of article I, section 11, of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) because the trial court imposed different

terms of imprisonment for various offenses that were predicated on the same type of conduct.

■ We first consider the defendant's eighth amendment argument. The eighth amendment to the United States Constitution prohibits the imposition of punishments that are cruel and unusual. U.S. Const., amend. VIII. The United States Supreme Court has determined, however, that the eighth amendment contains no guarantee of proportionality between an offense and the length of a sentence of imprisonment (*Harmelin v. Michigan*, 501 U.S. 957, 965, 115 L. Ed. 2d 836, 846, 111 S. Ct. 2680, 2686 (1991) (opinion of Scalia, J., joined by Rehnquist, C.J.)), except perhaps to forbid extreme sentences that are "grossly ▓▓▓▓▓proportionate" to the crime (*Harmelin*, 501 U.S. at 1001, 115 L▓▓▓▓ 2d at 869, 111 S. Ct. at 2705 (opinion of Kennedy, J., joined by ▓▓▓▓nnor and Souter, JJ.)). See *People v. Farmer*, 165 Ill. 2d 194, 210-11 (1995). In raising an eighth amendment constitutional challenge, the defendant may challenge either just his particular sentence (see, *e.g.*, *Solem v. Helm*, 463 U.S. 277, 303, 77 L. Ed. 2d 637, 657-58, 103 S. Ct. 3001, 3016 (1983)) or the entire statutory sentencing scheme (see, *e.g.*, *Harmelin*, 501 U.S. at 961-62, 115 L. Ed. 2d at 843, 111 S. Ct. at 2684).

■ Here, the defendant argues that his sentence was disproportionate because he received a longer sentence than that given to other defendants convicted of the same crime. The defendant also argues that the harshness of the penalty far exceeded the gravity of the offense. The defendant relies on *Solem*, 463 U.S. at 291-92, 77 L. Ed. 2d at 649-50, 103 S. Ct. at 3010, where the United States Supreme Court held that a court's proportionality analysis under the eighth amendment should be guided by several objective criteria, including (1) the gravity of the offense and the harshness of the penalty; (2) the sentence imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for the commission of the same crime in other jurisdictions.

However, the United States Supreme Court has subsequently narrowed its holding in *Solem*, finding that comparative analysis within and between jurisdictions is not always relevant to proportionality review. *Harmelin*, 501 U.S. at 1005, 115 L. Ed. 2d at 871, 111 S. Ct. at 2707 (opinion of Kennedy, J., joined by O'Connor and Souter, JJ.); see also *Harmelin*, 501 U.S. at 965, 115 L. Ed. 2d at 846, 111 S. Ct. at 2686 (opinion of Scalia, J., joined by Rehnquist, C.J.) (criticizing *Solem* and noting that the eighth amendment embodies no guarantee of proportionate punishments). In *Harmelin*, Justice Kennedy wrote that comparative case "analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence

imposed leads to an inference of gross disproportionality." *Harmelin,* 501 U.S. at 1005, 115 L. Ed. 2d at 871, 111 S. Ct. at 2707 (opinion of Kennedy, J., joined by O'Connor and Souter, JJ.). Thus, a comparative analysis of sentences is proper only after determining that the sentence imposed was grossly excessive punishment for the crime committed. *Harmelin,* 501 U.S. at 1005, 115 L. Ed. 2d at 871-72, 111 S. Ct. at 2707 (opinion of Kennedy, J., joined by O'Connor and Souter, JJ.).

■ Here, we do not believe that this is the "rare" case that supports an inference that the defendant's sentence was grossly disproportionate to his offense. See *Harmelin,* 501 U.S. at 1005, 115 L. Ed. 2d at 871, 111 S. Ct. at 2707 (opinion of Kennedy, joined by O'Connor and Souter, JJ.). The offenses that the defendant was convicted of were reprehensible and, due to their repetitive nature, are likely to have a permanent, devastating impact on both K.M. and R.C. Although the defendant's sentence was severe, in light of the nature of the crimes and because of his lack of rehabilitative potential, we believe that the defendant's sentence was not "grossly disproportionate" to his crime. See *People v. Bien,* 277 Ill. App. 3d 744, 756 (1996) ("The imposition of a practical life sentence in [an egregious sexual abuse case] is not manifestly disproportionate to the nature of the offense when a lesser sentence would send a dangerous message to other potential offenders they may act without concern of being brought to full justice for their crimes, no matter how abominable or abhorrent those crimes may be"). Accordingly, we do not find that the defendant's sentence supports an inference of disproportionality and therefore decline the defendant's invitation to engage in a comparative analysis of sentences imposed within this state as well as sentences imposed in other jurisdictions. For these same reasons, we do not find that the defendant's sentence violated the eighth amendment.

■ We also reject the defendant's contention that his sentence violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). The proportionate penalties clause requires that "[a]ll penalties shall be determined *** according to the seriousness of the offense." Ill. Const. 1970, art. I, § 11. This language mandates that penalties be proportionate to the seriousness of the offense. See *People v. Lewis,* 175 Ill. 2d 412, 419 (1996).

Challenges to one's sentence as violating the proportionate penalties clause of the Illinois Constitution, however, are traditionally raised only in the setting of a challenge to the constitutionality of a particular statutory sentencing scheme (see, *e.g., People v. Davis,* 177 Ill. 2d 495, 499 (1997)) or in arguing that a codefendant received a lesser sentence (see, *e.g., People v. St. Pierre,* 146 Ill. 2d 494, 512-13 (1992)).

Our research reveals that whenever the defendant has challenged just his particular sentence as being disproportionate to the nature of the crime, Illinois reviewing courts have not disturbed the sentence unless it is apparent that the trial court abused its discretion in imposing sentence. See *People v. Krankel*, 131 Ill. App. 3d 887, 897 (1985) (where the defendant argued sentence was disproportionate to offense, reviewing court would not disturb sentencing court's determination absent an abuse of discretion); *People v. Davidson*, 128 Ill. App. 3d 282, 284-85 (1984) (noting that only if sentence was greatly disproportionate to the nature of the crime will an abuse of discretion be found to exist).

In the case herein, the defendant is challenging only his particular sentence. As discussed above, we believe neither that the defendant's sentence was greatly disproportionate to the nature of his crime nor that the trial court abused its discretion in imposing sentence. See *Davidson*, 128 Ill. App. 3d at 284-85. Instead, we believe that the defendant's sentence reflects the severity of his crimes as well as his lack of rehabilitative potential. See *People v. Gagliani*, 251 Ill. App. 3d 1019, 1029 (1993).

■ Moreover, we find that the defendant's contention that his sentence is disproportionate in comparison to sentences imposed on others convicted of similar or more serious offenses to be without merit. Comparisons between defendants in different cases are proper, if at all, only when the circumstances of the two defendants are substantially identical. See *Bien*, 277 Ill. App. 3d at 754; *People v. Terneus*, 239 Ill. App. 3d 669, 675-78 (1992). An appellate court must determine whether the trial court abused its discretion considering the facts in the case at hand and not in comparison to arbitrarily chosen facts in arbitrarily chosen cases. *Bien*, 277 Ill. App. 3d at 755. As the trial court's findings in the case herein were supported by the record, we find no abuse of discretion. See *Bien*, 277 Ill. App. 3d at 755.

Additionally, contrary to the defendant's contention, we do not believe that the trial court is obligated to impose an identical term of imprisonment for each conviction when the defendant is convicted on multiple counts. See *People v. Taggart*, 233 Ill. App. 3d 530, 534, 560-61 (1992) (defendant convicted of five counts of aggravated criminal sexual assault; defendant sentenced to 30 years' imprisonment on the first four counts and sentenced to 15 years' imprisonment on the fifth count). Here, the trial court imposed a 30-year sentence on some counts and the minimum 6-year sentence on other counts. However, as each of these specific sentences was within the permissible statutory range, and because the trial court did not otherwise abuse its discretion, we decline to disturb the sentence. See *People v. Jones*, 168 Ill. 2d 367, 373-74 (1995); *Taggart*, 233 Ill. App. 3d at 534, 560-61.

■ As his final contention of error concerning his sentence, the defendant argues that we should vacate that portion of the sentencing order that (pursuant to the truth-in-sentencing provisions of the Unified Code (730 ILCS 5/3—6—3(a)(2)(i) (West 1996))) required him to serve 85% of his sentence on count LI. The defendant argues that Public Act 89—404 (Pub. Act 89—404, eff. August 20, 1995), in which the legislature enacted the truth-in-sentencing provisions of the Unified Code, violates the single subject rule of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, § 8(d)). The defendant argues that he should instead receive the day-to-day good-conduct credit that he was entitled to receive prior to the statute's enactment. See 730 ILCS 5/3—6—3 (West 1994).

The State argues that this issue is waived because the defendant failed to object at the sentencing hearing and failed to raise the issue in a motion to reconsider sentence. However, our supreme court has determined that a challenge to the constitutionality of a statute can be raised at any time. *People v. Bryant*, 128 Ill. 2d 448, 454 (1989). Moreover, we have previously held that a defendant may raise this precise issue on appeal. *People v. Reedy*, 295 Ill. App. 3d 34, 38 (1998). Additionally, contrary to the State's assertion, we believe that a defendant is not barred from challenging the constitutionality of a statute merely because it has become part of the officially published law of the state. See generally *Bryant*, 128 Ill. 2d at 454 (holding that a constitutional challenge to a statute may be raised at any time).

In *Reedy*, this court held that the truth-in-sentencing provisions of section 3—6—3(a)(2)(ii) of the Unified Code violated the single subject rule of the Illinois Constitution of 1970. *Reedy*, 295 Ill. App. 3d at 44. Despite the State's invitation to reconsider our holding in *Reedy*, we decline to do so. Rather, we adhere to the analysis enunciated there and hold that the defendant herein is eligible to receive whatever good-conduct credit he would have been eligible to receive prior to the enactment of the truth-in-sentencing provisions of the Unified Code. See *Reedy*, 295 Ill. App. 3d at 44.

The State further contends that the defendant's sentence may nonetheless be affirmed because of the subsequent "reenactment" of the truth-in-sentencing provisions in Public Act 89—462 (Pub. Act 89—462, §§ 260, 280, eff. May 29, 1996) and Public Act 89—656 (Pub. Act 89—656, § 15, eff. January 1, 1997). The State argues that these "reenactments" cured any defect in Public Act 89—404. We disagree. Neither Public Act 462 nor Public Act 656 is applicable to the case at bar, as neither became effective until after the offenses for which the defendant was charged had occurred. See *People v. Pitts*, 295 Ill. App. 3d 182, 190 (1998).

Finally, the State contends that if we adhere to our decision in *Reedy*, the defendant's sentence should be considered void *ab initio*, and the matter should be remanded for resentencing. We disagree. In *Reedy*, we held that such a remand was unnecessary and instead modified the defendant's sentence to receive whatever good conduct credit he would have been eligible to receive prior to the enactment of the truth-in-sentencing provisions of the Unified Code. *Reedy*, 295 Ill. App. 3d at 44. Accordingly, pursuant to *Reedy*, we hold that the sentencing order herein shall be redacted to delete the language that the defendant's sentence on count LI is subject to the truth-in-sentencing provisions of Public Act 89—404.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed as modified.

Affirmed as modified.

INGLIS and RATHJE, JJ., concur.