THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARK E. McINTOSH, Defendant-Appellant.

Fifth District   No. 5—97—1001

Opinion filed June 1, 1999.—Rehearing denied June 25, 1999.

Daniel M. Kirwan and E. Joyce Randolph, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Mike Rowland, State's Attorney, of Benton (Norbert J. Goetten, Stephen E. Norris, and Kevin Sweeney, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOPKINS delivered the opinion of the court:

Defendant appeals from his April 10, 1996, convictions of home invasion (720 ILCS 5/12—11 (West 1996)) and criminal sexual assault (720 ILCS 5/12—13 (West 1996)). The trial court sentenced defendant to 10 years' imprisonment on each offense, the sentences to be served consecutively. Additionally, the trial court stated that as a part of defendant's sentence, he was to serve at least 85% of the sentence for criminal sexual assault prior to release, pursuant to the Illinois truth-in-sentencing requirements. See 730 ILCS 5/3—6—3(a)(2) (West 1996) (as amended by Pub. Act 89—404, eff. August 20, 1995). This court dismissed defendant's first appeal and remanded the case back to the trial court for a hearing on defendant's motion for new trial or reduction of sentence. The trial court denied that motion on October 16, 1997.

In this appeal, defendant argues that (1) he was not proven guilty beyond a reasonable doubt of criminal sexual assault, (2) he was denied the effective assistance of counsel because his attorney failed to file a motion for discharge for a violation of the speedy-trial statute (725 ILCS 5/103—5 (West 1996)) and because trial defense counsel failed to offer jury instructions on the lesser offense of criminal sexual abuse, (3) his conviction of criminal sexual assault must be vacated as a lesser-included offense of the charge of home invasion, and (4) he is entitled to credit for good time on his sentence of imprisonment. We affirm the convictions and sentence of imprisonment, but we modify the portion of defendant's sentence entered under the truth-in-sentencing provisions.

## FACTS

On October 27, 1995, defendant was indicted for aggravated criminal sexual assault (720 ILCS 5/12—14 (West 1994)) and home invasion. The indictment for home invasion charged that defendant, not being a peace officer, "knowingly, and without authority, entered the dwelling of [the victim, hereinafter referred to as L.G.] *** knowing [L.G.] to be present within that dwelling and intentionally caused

injury to [L.G.] in that he sexually assaulted [L.G.]." On November 1, 1995, the case was set for arraignment, but defense counsel requested that the arraignment be continued in order for him to do research concerning the indictment.

On November 15, 1995, the State filed a motion for special discovery, requesting, *inter alia*, blood samples from defendant. The matter was heard on November 22, 1995. The court orally granted the State's request and admonished the State to draft the order as soon as possible, since the trial judge would be out of town the following two weeks. The order granting the State's motion was entered on December 13, 1995.

On January 17, 1996, defendant's attorney filed a motion to withdraw as counsel, which was denied the next day with defendant's acquiescence. On January 31, 1996, defendant filed six motions, which were decided on March 15, 1996. Defendant admits in his brief that 46 days of delay are chargeable to him based upon his filing of the above-described motions.

On February 2, 1996, the State filed a motion to continue the case, which was originally set for jury trial on February 6, 1996. The State requested an additional 60 days to obtain the laboratory analysis of defendant's blood samples. In the motion, the State alleged that it exercised due diligence in submitting the blood samples to the State crime lab for DNA analysis. On February 5, 1996, the trial court granted the State's motion for continuance for 60 days.

The jury was selected on April 2, 1996, and the case proceeded to trial on April 4, 1996. Both defendant and the State agree that 171 days passed between defendant's arrest and his trial.

At trial, the following relevant evidence was adduced: L.G. testified that during the evening hours of October 12, 1995, she was with a friend, Roberta Frye, at a tavern in Benton, Illinois. At about 7:30 p.m., L.G. noticed defendant come into the tavern. L.G. and defendant had dated about 10 years earlier, and they had lived together at various times in the early to mid-1980s. L.G. testified that since then, she had not had any contact with defendant other than occasionally seeing him around Benton. Defendant's testimony about their prior relationship was essentially the same as L.G.'s; however, defendant testified that he and L.G. had a one-night consensual sexual encounter in October 1989.

L.G. testified that defendant sat at the table with L.G., Roberta, and another friend, although no one invited him to sit there. Defendant testified that he was invited to sit with the group. L.G. believed that defendant had been drinking before she saw him. L.G. drank alcohol at the tavern, but Roberta did not. Defendant was also drink-

ing while at the tavern. L.G. and Roberta left the tavern about 9:30 that night. Defendant testified, and L.G. denied, that L.G. gave him a hug and a kiss before she left the tavern and that she invited him to visit her at home later that evening. Roberta and L.G. stayed at L.G.'s trailer for a while before Roberta left to go home. Roberta corroborated L.G.'s testimony about the events that occurred before Roberta left L.G.'s residence.

After Roberta left, L.G. took her dog outside. According to L.G.'s testimony, when she was reentering her trailer, defendant grabbed her from behind, put a knife to her face, and told her that he was tired of how L.G. refused to talk to him when he saw her. L.G. testified that she could not see the knife clearly and could not describe it. Defendant came into the trailer behind L.G., but L.G. did not invite him inside. L.G. described defendant as angry, and she testified that he frightened her. Inside the residence, defendant held onto L.G.'s clothing and continued to hold the knife up to her face. L.G. told defendant to let her go.

The next thing L.G. remembered was lying facedown on her bed in her bedroom. She was naked and defendant was on top of her tying her hands behind her with something that felt like a sock. L.G. testified that her feet were also tied. Although she could not see defendant, she could tell that he was naked and had an erection. L.G. testified that defendant tried to, but could not, insert his penis all the way into her vagina, although his genitals came into contact with her genitals. L.G. testified that when defendant lay on top of her, he threatened to cut her face. Defendant then got up from the bed. L.G. testified that when she asked defendant why he always did this to her, he laughed and answered, "because I can."

Defendant then allowed L.G. to go to the bathroom, evidently untying her hands and feet. While she was in the bathroom, defendant left. After waiting a few minutes, L.G. came out of the bathroom and called Roberta. Roberta called the police, and shortly thereafter, two police officers arrived at L.G.'s trailer.

Benton police officer Kenny Cochrum testified that at about 11:20 p.m. on October 12, 1995, he responded to a call regarding a sexual assault at L.G.'s residence. When Cochrum arrived, L.G. answered the door. Cochrum described L.G. as crying and "traumatized." L.G. told Cochrum that defendant raped her and beat her. Cochrum noticed red marks, about three-quarters of an inch wide, on L.G.'s wrists. Cochrum described the interior of L.G.'s trailer as "in total disarray." Cochrum surmised that the disorder was the result of a struggle, because the adjacent kitchen area was neat and clean. Cochrum transported L.G. to the Franklin Hospital and returned to the scene.

After Cochrum returned to L.G.'s residence, he was met by two crime-scene investigators from the Carbondale Crime Lab—John Lewis and Scott Rice. Lewis testified that he photographed the interior of the trailer, which he felt showed signs of a struggle, due to the number of items that appeared to have been knocked to the floor. Lewis collected L.G.'s clothing from her bedroom, hair and fiber samples, and an empty package of Basic Brands cigarettes. Both L.G. and Roberta testified that they did not smoke that brand of cigarette. Defendant's fingerprints were found on the package, and defendant admitted that he brought the package into the trailer with him.

Forensic scientist Suzanne Kidd testified that she compared pubic hairs recovered from L.G.'s residence to pubic hairs taken from defendant, L.G., and L.G.'s boyfriend, Scott Aud. Kidd testified that pubic hairs found in L.G.'s living room and bedroom were consistent with those of defendant but inconsistent with those of L.G. or Aud. Kidd also examined L.G.'s clothing. Kidd testified that the zipper on the jeans was broken, the seam next to the zipper was torn, and the shirt and the panties were torn.

Defendant testified that L.G. invited him to the trailer before she left the bar. Defendant testified that after he arrived at the trailer, he smoked his last cigarette while he and L.G. talked. According to defendant, he and L.G. then went to her bedroom, and they each took off their clothes. Defendant denied that he did anything without L.G.'s consent. Defendant testified that when L.G. went to the bathroom, that kind of "spoiled" the mood, they started arguing, and he left. Defendant admitted that he gave a statement to the police claiming that he had not been to L.G.'s trailer, but he explained that he initially lied to the police so that his wife would not learn of his encounter with L.G.

At the close of the evidence, during the instructions conference, the State offered instructions for aggravated criminal sexual assault, which requires the jury to find that the crime was committed while displaying a weapon, and for the lesser-included offense of criminal sexual assault, which does not require the display of any weapon. The jury returned verdicts of guilty on the charges of home invasion and the lesser-included offense of criminal sexual assault.

## ANALYSIS

### I. REASONABLE DOUBT

Defendant contends that there is insufficient evidence of the elements of criminal sexual assault to support his conviction on that charge. According to defendant, L.G.'s testimony was equivocal because she reported to the nurse who examined her at the hospital

that defendant had not penetrated her and because she "ambiguously indicated that she had felt the defendant's penis against her vagina while she lay face[ ]down on her bed."

■ Section 12—13(a)(1) of the Criminal Code of 1961 provides as follows:

"The accused commits criminal sexual assault if he or she:

(1) commits an act of sexual penetration by the use of force or threat of force." 720 ILCS 5/12—13(a)(1) (West 1996).

An act of sexual penetration is defined as follows:

"any contact, however slight, between the sex organ or anus of one person by [sic] an object, the sex organ, mouth[,] or anus of another person ***." 720 ILCS 5/12—12(f) (West 1996).

■ The evidence is clear. L.G. testified that defendant's erect penis came into contact with her "sex organ," that she did not consent to the sexual encounter, and that defendant forced her to do these things against her will. That evidence is sufficient to prove beyond a reasonable doubt that defendant was guilty of criminal sexual assault. See *People v. Hebel*, 174 Ill. App. 3d 1 (1988) (this court decided that under the current law, the State does not have to show any penetration of, or even contact with, a woman's vagina, since under the statute a woman's "sex organ" includes all of her genitalia); see also *People v. Bofman*, 283 Ill. App. 3d 546, 552 (1996); *People v. Moore*, 199 Ill. App. 3d 747, 773 (1990) (actual penetration is not an element of criminal sexual assault, because the slightest contact between sex organs is sufficient to prove "sexual penetration"). The cases that defendant cites refer to earlier statutory provisions that required proof of "actual penetration." Thus, defendant's claim on this issue fails.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. MOTION FOR DISCHARGE FOR VIOLATION OF SPEEDY TRIAL STATUTE

Defendant maintains that his attorney was ineffective because he did not file a motion for discharge for the violation of defendant's right to a speedy trial. According to defendant, more than 120 days passed between his arrest and his trial, excluding delay attributable to him, because the State failed to prove that it exercised due diligence in obtaining the lab analysis prior to its motion for a continuance on that basis.

■ The speedy-trial statute provides, in pertinent part:

"(a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from

the date he was taken into custody unless delay is occasioned by the defendant ***. ***

\* \* \*

(c) *** If the court determines that the State has exercised without success due diligence to obtain results of DNA testing that is material to the case and that there are reasonable grounds to believe that such results may be obtained at a later day, the court may continue the cause on application of the State for not more than an additional 120 days.

(d) Every person not tried in accordance with subsections (a), (b)[,] and (c) of this Section shall be discharged from custody or released from the obligations of his bail or recognizance." 725 ILCS 5/103—5 (West 1996).

Defendant argues that when he was arrested on October 13, 1995, a search warrant was issued contemporaneously. The search warrant authorized the police to take blood and hair samples from defendant. No blood samples were taken from defendant at that time, but on November 22, 1995, the State requested an order to authorize taking blood and saliva samples for DNA analysis. Defendant's attorney informed the court that hair samples were already taken from defendant. The State agreed that it had the hair samples, but it reiterated that it needed blood and saliva samples. Defendant's attorney stated that he had no objection. Later, on February 2, 1996, a few days before defendant's jury trial was scheduled to begin, the State requested a continuance under subsection (c) of the speedy-trial statute (725 ILCS 5/103—4(c) (West 1996)). Attached to the motion for continuance was an affidavit signed by the State's Attorney, which included the following statement:

"4. That the State's Attorney's Office and the State of Illinois have moved with due diligence in this cause to get the DNA samples promptly tested and reported back to the State's Attorney in order that I may discover those to the defendant in order that both sides be prepared to try this cause ***."

Defendant's attorney agreed to the continuance.

■ Where a defense attorney specifically agrees to the State's request for a continuance, the ensuing delay is attributable to defendant. See *People v. Smith*, 251 Ill. App. 3d 839, 843 (1993). On a motion for discharge under the speedy-trial statute, the burden is on defendant to establish the violation. See *Smith*, 251 Ill. App. 3d at 842. Here, defendant does not argue that his attorney was incompetent for failing to object to the State's motion for continuance, but he argues only that his attorney was incompetent for failing to move for a discharge for a violation of the speedy-trial statute. We fail to see how his attorney could have prevailed on such a motion, since the law is clear that the delay was attributable to defendant.

Additionally, the State correctly points out that filing such a motion would have been futile, since defendant was brought to trial within the 120-day statutory period. We agree. Defendant was arrested on October 13, 1995, and jury selection began on April 2, 1996, so that 171 days passed between arrest and trial. See *People v. Grant*, 104 Ill. App. 3d 183, 188 (1982) (the period in custody is calculated by excluding the day of arrest but including the day trial begins). The statute provides that a defendant in custody must be tried within 120 days of arrest, excluding delays caused by the defense and lawful statutory extensions granted by the trial judge. 725 ILCS 5/103—5 (West 1996).

Without considering the delay caused by defendant's acquiescence to the State's motion for a continuance to obtain the DNA analysis, we calculate 67 days of delay attributable to defendant, which includes 21 days of delay for defense counsel to conduct research on the indictment and 46 days of delay for the court to rule upon defendant's various motions. See *People v. Lendabarker*, 215 Ill. App. 3d 540 (1991) (delay occasioned by defense counsel's request to conduct research on indictment is attributable to defendant, and the delay caused by defendant's filing of motions is ordinarily chargeable to defendant). When the 67 days of delay attributable to defendant are subtracted from 171 days, the remainder is 104 days. Therefore, defendant was brought to trial within the 120-day speedy-trial limitation.

We do not find that defendant's attorney was ineffective for failing to file a motion for discharge when there was no basis for such a motion. "It is not incompetence to refrain from raising an issue counsel believes to be without merit, unless his appraisal of the merits is clearly wrong." *People v. Mendez*, 221 Ill. App. 3d 868, 873 (1991).

### B. INSTRUCTION ON LESSER-INCLUDED OFFENSE OF CRIMINAL SEXUAL ABUSE

■ Defendant next argues that his attorney was ineffective because he failed to submit an instruction on the lesser-included offense of criminal sexual abuse (720 ILCS 5/12—12 (West 1996)). Defendant again argues that proof of sexual penetration was necessary to a conviction of criminal sexual assault but that since such evidence was "sorely lacking," the evidence failed to prove that he was guilty of criminal sexual assault. Defendant contends that, at most, the evidence established that defendant may have engaged in "sexual conduct," the touching or fondling of the complainant's sex organ or anus, which is sufficient only to prove that defendant committed criminal sexual abuse, not criminal sexual assault. See 720 ILCS 5/12—12(e) (West 1996).

Defendant maintains he was entitled to have the jury instructed on any theory of the case that was supported by the evidence, even if that evidence was very slight and even if it conflicted with his defense that L.G. consented to the sexual encounter. According to defendant, his attorney made a mistake when he failed to tender an instruction on the lesser-included offense of criminal sexual abuse, the error cannot be considered a trial tactic, and therefore, the error amounts to the ineffective assistance of counsel, for which defendant is entitled to a new trial. We disagree.

First, as we explained earlier, proof of actual penetration is not necessary to a conviction for criminal sexual assault; proof of the slightest contact between sex organs is sufficient to prove the element of "sexual penetration." See *Bofman*, 283 Ill. App. 3d at 552.

Second, the decision of whether to submit an instruction on a lesser-included offense is typically considered to be one of trial strategy, which has no bearing on the competency of counsel. See *People v. Balle*, 256 Ill. App. 3d 963 (1993); *People v. Palmer*, 188 Ill. App. 3d 414, 428 (1989); *People v. Webster*, 175 Ill. App. 3d 119, 128 (1988). In this case, defendant took the stand and testified in his own defense that L.G. consented to having sex with him. Defendant's attorney may have strategized that it was better for the jury not to have the choice of the lesser-included offense in the hope that they would be more inclined to acquit defendant of all charges.

Moreover, even if defense counsel's trial strategy does not succeed, unless his representation falls outside the wide range of reasonably competent assistance and unless there is a reasonable probability that, but for the alleged error, the result of the proceeding would have been different, the error does not amount to ineffective assistance. See *People v. Albanese*, 104 Ill. 2d 504, 525 (1984). Defendant urges this court to conclude that a reasonable probability exists that this alleged error affected the jury's decision. However, when we consider this issue in light of the strong presumption that counsel's alleged errors were part of his trial strategy (see *Albanese*, 104 Ill. 2d at 526), we do not find that defendant was deprived of the effective assistance of counsel.

### III. WHETHER CRIMINAL SEXUAL ASSAULT CONVICTION MUST BE VACATED AS A LESSER-INCLUDED OFFENSE OF HOME INVASION

Defendant contends that, in the indictment, he "was charged with home invasion in that not being a peace officer, he entered the home of L.G. without authority, knowing that L.G. was present, and inflicted injury on her in that he committed aggravated criminal sexual

assault upon her." Defendant misstates the wording of the indictment. The indictment for home invasion does not include the words "aggravated criminal sexual assault," but rather, it charges defendant with home invasion "in that he sexually assaulted" L.G. The terms in the indictment for home invasion do not allege any of the elements of criminal sexual assault but only offer a description of the injury that occurred when defendant wrongfully entered L.G.'s home.

We reject defendant's argument that criminal sexual assault is a lesser-included offense of the crime of home invasion as charged in this indictment. The words of the indictment, "sexually assaulted," are mere surplusage that do not define any particular crime in Illinois, since several different crimes involve sexual assault. See 720 ILCS 5/12—13, 12—14, 12—15 (West 1996). The home invasion count does not allege any act of sexual penetration, which is an essential element of criminal sexual assault. See 720 ILCS 5/12—13 (West 1996). "A lesser included offense arises when the greater offense includes every element of the lesser offense plus one or more elements." *People v. Yarbrough*, 269 Ill. App. 3d 96, 103 (1994). Criminal sexual assault is not charged by the words "sexually assaulted," and the indictment's charge of home invasion does not allege the elements of any sexual offense. Therefore, criminal sexual assault is not a lesser-included offense of home invasion, either as those crimes are defined by statute or as they are alleged in the indictment. See *People v. Garrett*, 281 Ill. App. 3d 535 (1996); *People v. Garza*, 125 Ill. App. 3d 182 (1984).

## IV. GOOD-CONDUCT CREDIT AND TRUTH-IN-SENTENCING

■ Defendant argues that his sentencing order must be amended to reflect that he is eligible for good-conduct credit, pursuant to section 3—6—3 of the Unified Code of Corrections (730 ILCS 5/3—6—3 (West 1996)), the "rules and regulations for early release" that are applied by the Department of Corrections to incarcerated inmates. During defendant's sentencing hearing, the trial court orally informed defendant that he would be required to serve 85% of his sentence for criminal sexual assault before he would be eligible for release, in accordance with the truth-in-sentencing provisions created by Public Act 89—404 (eff. August 20, 1995). Defendant contends that Public Act 89—404, which amended section 3—6—3, is unconstitutional. We agree. In *People v. Reedy*, 186 Ill. 2d 1, 11, 708 N.E.2d 1114, 1119 (1999), the supreme court concluded that Public Act 89—404, which includes the truth-in-sentencing provisions, is unconstitutional under the single-subject rule of the Illinois Constitution (Ill. Const. 1970, art. IV, § 8). Thus, we hereby follow the supreme court's decision in *Reedy* and hold that defendant is eligible to receive the good-conduct credit

that he would have been eligible to receive prior to the enactment of Public Act 89—404.

The State argues that we must remand this case to the trial court for a new sentencing hearing, because "good[-]time credit is part of every sentence." The State's argument on this issue is similar to the State's argument in *People v. Hindson*, 301 Ill. App. 3d 466, 703 N.E.2d 956 (1998), which was decided by the Second District Appellate Court after its decision in *Reedy* (*People v. Reedy*, 295 Ill. App. 3d 34 (1998)), but before the supreme court affirmed that decision.

In *Hindson*, the State argued that "the defendant's sentence should be considered void *ab initio*" and that the cause should be remanded to the trial court for resentencing. *Hindson*, 301 Ill. App. 3d at 481, 703 N.E.2d at 967. In Illinois, a statute that is found to be unconstitutional is considered void *ab initio*. See *People v. Gersch*, 135 Ill. 2d 384 (1990). Under the law, it is as if that statute had never been passed. In *Hindson*, as well as in the case at bar, the State makes an enormous leap in logic when it argues that since Public Act 89—404 was found to be unconstitutional and since good-conduct credit is part of every sentence (*Reedy*, 186 Ill. 2d at 7, 708 N.E.2d at 1116), defendant's entire sentence must also be void *ab initio*. We disagree with the contention that the unconstitutionality of the truth-in-sentencing provisions affects defendant's underlying sentence of imprisonment.

In *Hindson*, the court summarily rejected the State's argument, stating that in its earlier decision in *Reedy*, it held that "such a remand was unnecessary." *Hindson*, 301 Ill. App. 3d at 481, 703 N.E.2d at 967. Instead, the court modified the defendant's sentence as it did in *Reedy*, where the sentence was modified so that defendant would receive "whatever good[-]conduct credit he would have been eligible to receive prior to the enactment of the truth-in-sentencing provisions." *Hindson*, 301 Ill. App. 3d at 481, 703 N.E.2d at 967. We agree with the *Hindson* court's approach.

In the case at bar, defendant's sentences of imprisonment were entered pursuant to section 5—8—1 of the Unified Code of Corrections (the Unified Code) (730 ILCS 5/5—8—1(a)(3), (a)(4) (West 1996)). The sentences were required to be served consecutively under section 5—8—4(a) of the Unified Code (730 ILCS 5/5—8—4(a) (West 1996)). In *Reedy*, the supreme court did not strike down either section 5—8—1 or section 5—8—4 of the Unified Code. Rather, the supreme court merely affirmed the appellate court's finding that Public Act 89—404 was unconstitutional. *Reedy*, 186 Ill. 2d at 11, 708 N.E.2d at 1119. Moreover, the legislature has already dealt with this issue by enacting section 8—4—1 of the Unified Code, which provides:

"If any provision of this Code or application thereof to any person or circumstance is held invalid, such invalidity does not affect other provisions or applications of this Code which can be given effect without the invalid application or provision, and to this end the provisions of this Code are declared to be severable." 730 ILCS 5/8—4—1 (West 1996).

Thus, in the case at bar, the only portion of defendant's sentence affected is the trial court's ruling that defendant is not entitled to day-for-day good-conduct credit and that he must serve at least 85% of his original sentence under the unconstitutional truth-in-sentencing provisions. The written judgment order under which defendant's sentence of imprisonment was entered contains no provision regarding truth-in-sentencing. Accordingly, we hold that since the truth-in-sentencing provisions are unconstitutional, the trial court's verbal ruling applying the truth-in-sentencing provisions is void, but the remainder of defendant's sentence remains valid.

## CONCLUSION

For all of the reasons stated, we affirm defendant's convictions and his sentences of imprisonment, but we modify his sentence to exclude the provisions of the truth-in-sentencing law.

Affirmed as modified.

CHAPMAN and KUEHN, JJ., concur.