THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEVEN HERRING, Defendant-Appellant.

First District (6th Division)    No. 1—00—1353

Opinion filed July 27, 2001.

Rita A. Fry, Public Defender, of Chicago (Michelle Thomas, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Mary P. Needham, Bonnie J. Greenstein, and Alan J. Spellberg, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GALLAGHER delivered the opinion of the court:

Following a bench trial, defendant, Steven Herring, was convicted of two counts of home invasion and four counts of aggravated criminal sexual assault. He was sentenced to six years' imprisonment for each count of aggravated criminal sexual assault, with the terms to run consecutively, and one year's imprisonment for home invasion, to run concurrently. Defendant appeals his conviction arguing that he was not proved guilty beyond a reasonable doubt of four separate acts of aggravated criminal sexual assault where there was testimony as to only three acts of penetration. We also granted defendant's request to file a supplemental brief in which he contends that the recent decision by the United States Supreme Court, *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), requires his sentences to run concurrently because he was not afforded a jury determination of the aggravating factors used to enhance his sentence. We affirm.

•1 The standard for reviewing the sufficiency of the evidence in a bench trial is the same as it is in a jury trial. *People v. Howery*, 178 Ill. 2d 1, 38, 687 N.E.2d 836, 854 (1997). The reviewing court applies the reasonable doubt standard as set forth in *People v. Collins*, 106 Ill. 2d 237, 478 N.E.2d 267 (1985). This standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Collins*, 106 Ill. 2d at 261, 478 N.E.2d at 277. This standard is applicable in all criminal cases, regardless of whether the evidence is direct or circumstantial, and allows the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *People v. Campbell*, 146 Ill. 2d 363, 374-75, 586 N.E.2d 1261, 1266 (1992). Under this standard, we will not reverse a criminal conviction unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *Campbell*, 146 Ill. 2d at 375, 586 N.E.2d at 1266. This test has not been met in the present case.

In making its ruling, the trial court found that the victim in this case was absolutely and totally credible and that her testimony was compelling, honest, and straightforward. The court further noted that the victim's testimony was corroborated by both a security officer and a police officer, as well as the stipulated medical testimony. The court determined that these factors, in addition to the physical evidence and in further consideration of the "absolutely and totally incredible testimony of the defendant," led to the court's decision that the State had met its burden of proof.

The court went on to state as follows:

> "I just want the record to be perfectly clear that I find there were 4 separate individual sex acts; the two that occurred in the apartment, and the two that occurred in the basement cellar, for lack of a better way of describing the room where those later in time sexual offenses occurred."

It is defendant's position that the State failed to sustain its burden as to the second of the two offenses that occurred in the apartment.

The victim in this case was a 31-year-old woman who lived alone in a second-floor apartment in Chicago. On April 27, 1998, the victim was sitting on the toilet with the bathroom door open. She heard a loud noise and saw defendant running toward her. She jumped up and tried to push the door closed, but defendant pushed it open. The victim screamed and banged on the wall to try to tell her neighbor to call the police. She then grabbed the toilet lid and hit defendant on the head with it. Defendant grabbed the victim by the neck and choked her. He

told her that if she kept screaming, he would kill her. He punched her in the face with his closed fist. He hit her in her lip and face. As they were fighting, they fell to the floor. The victim then grabbed a bleach bottle from underneath the sink and threw bleach in defendant's face. She then tried to escape to the front door, but defendant grabbed her by the back of her hair and pulled her into the living room. The victim also testified that, at the time defendant was moving her to the living room, she saw a knife in his hands. Once in the living room, a struggle ensued. The defendant and the victim tripped over the coffee table, knocking out the glass top. The victim fell on the couch. Defendant told the victim to "shut up" and called her a "bitch."

It was at this point that the defendant then committed the first of the four sexual offenses. Regarding the first sexual offense that occurred inside the apartment, which is not at issue in this appeal, the victim testified as follows:

"Q. What happened next while you were in the living room on the couch?

A. He started trying to pull my shirt off.

Q. Now at the time that's going on, tell the Judge what it was that you were wearing at the time?

A. I was wearing a black, like a—like a black whole piece cat suit.

Q. Is it a whole one piece outfit?

A. Yes.

Q. When he started to remove your clothes what did he do?

A. He was pulling it, pulling it down.

Q. Did he manage to do anything with the clothes?

A. Yes.

Q. What did he do?

A. He ripped it.

Q. And then what happened?

A. That's what [sic] he started like unbuttoning his pants.

* * *

Q. When you say he was doing something with his pants, what did he do?

A. He unzipped him.

Q. He unzipped them? Did he lower them or just unzip them?

A. He unzipped them.

Q. Did he do anything once the pants were unzipped?

A. He took out his privates.

Q. When you say his 'privates,' what part of his body did you see?

A. His penis.

Q. Once his penis was out did anything happen?

A. Yes. He tried to start putting it in my mouth.

Q. Did his penis ever actually make contact with your mouth?

A. Yes.

Q. What happened after his penis made contact with your mouth?

A. I was trying to bite it."

With respect to the second sexual offense that took place inside the apartment, the victim then continued to testify as follows:

"Q. Then what happened?

A. That's when I—we was struggling. And then when he got a chance to pull the rest of my stuff off like down to my lower area right here (indicating).

Q. How low?

A. Low being like to my waist.

THE COURT: Indicating for the record she's indicating her waist area.

MR. O'REILLY [Assistant State's Attorney]: Thank you.

Q. Then what happened? Or let me ask you this. Strike that. At this point are you still in the living room?

A. Yes.

Q. What happened next?

A. That when we was on the floor again. Then he was like over me then.

Q. Okay. Describe the positioning. If you were on the floor, who is where?

A. I was laying back. He was on top of me like his knees. I mean he was like over me. Like I was laying down; he was over me. And he had me still, like choking me and stuff.

Q. When you say he was over you, was each of his legs on either side of you lying over you?

A. Yes.

Q. And when you say you were lying on the ground, are you lying face up or face down?

A. Face up.

Q. With your face up. Is that in a position where you'd be able to see him?

A. Yes.

Q. What happened once you're on the floor and he was in that position?

A. He still was trying to pull my clothes. He was pulling my clothes down.

Q. Did he get your clothes lower?

A. Yes.

Q. How much lower did your clothes go?

A. To about here (indicating).

Q. Where is that? Describe it on your body?

A. Like below my knees.

Q. Below your knees?

A. Uh-huh.

Q. Okay. And what happened once your clothes were now below your knees?

A. He was pulling his clothes, pulling his clothes down, trying to stick his thing in.

Q. When you say stick his 'thing,' what are you referring to.

A. His penis.

Q. Okay. Did he do anything with his penis at that point?

A. No because we was like fighting. So he never did get a chance to really do anything. And at that time I was tussling with him and—

Q. Let me ask you what you mean by tussling?

A. Like fighting, like fighting, scratching. He was like choking me. His hands on my mouth. So I was kind of like grabbing him so he would get off of me, like grabbing him.

Q. Okay. What happened now?

A. That's when I had a chance to get up."

Defendant argues that this testimony regarding the second of the four sexual offenses, viewed in the light most favorable to the prosecution, clearly does not prove any penetration occurred. Defendant is wrong.

•2 In order to find a defendant guilty of the offense of aggravated criminal sexual assault, the trier of fact must find that the accused committed an act of sexual penetration by the use of force or threat of force, and the accused caused the victim bodily harm or has displayed, threatened to use, or has used, a dangerous weapon. *People v. Washington*, 240 Ill. App. 3d 688, 704, 608 N.E.2d 546, 556 (1992). Sexual penetration is defined as:

"[A]ny contact, however slight, between the sex organ or anus of one person by an object, the sex organ, mouth or anus of another person, or any intrusion, however slight, of any part of the body of one person *** or object into the sex organ or anus of another person ***." 720 ILCS 5/12—12(f) (West 1998).

It has been noted that the inclusion by the legislature of the words "any contact, however slight," as part of the definition of "sexual penetration" is contrary to the commonly understood meaning of penetration. *People v. Hope*, 142 Ill. App. 3d 171, 491 N.E.2d 785 (1986). The legislature has chosen to enlarge an element of the crime of rape so that contact of sexual organs between an accused and a victim will have the same legal effect as the penetration or actual entering the body of the victim. *Hope*, 142 Ill. App. 3d 171, 491 N.E.2d 785.

Thus, the statutory definition of "penetration" does not require physical penetration but merely requires contact. *People v. Moore*, 199 Ill. App. 3d 747, 773, 557 N.E.2d 537, 555 (1990). Even in the absence

of proof of actual penetration, proof of even the slightest contact between sex organs is sufficient to prove the element of "sexual penetration." *People v. McIntosh,* 305 Ill. App. 3d 462, 471, 712 N.E.2d 893, 900 (1999); see also *People v. Hebel,* 174 Ill. App. 3d 1, 31-32, 527 N.E.2d 1367, 1386-87 (1988) (the State does not have to show any penetration of, or even contact with, a woman's vagina, since under the statute a woman's "sex organ" includes all of her genitalia); *People v. Bofman,* 283 Ill. App. 3d 546, 552, 670 N.E.2d 796 (1996) (actual penetration is not an element of criminal sexual assault, because the slightest contact between sex organs is sufficient to prove "sexual penetration"); *People v. Moore,* 199 Ill. App. 3d 747, 773, 557 N.E.2d 537 (1990) (same).

•3 Defendant claims that, from the evidence, it is unreasonable to infer that penetration occurred. He asserts that the victim's testimony that "he never did get a chance to really do anything" meant no "penetration" occurred. Although acknowledging the legal definition of "sexual penetration," defendant's argument that no "penetration" occurred incorrectly relies upon the word "penetration" as it is commonly understood. In addition, defendant's argument, that because the victim never "stated" that any "contact" actually occurred means that it would be unreasonable to infer that penetration occurred, might be valid if the statute required actual physical penetration, but it does not. The issue of whether penetration occurred is a question of fact to be evaluated by the trier of fact, and a lack of detail in a witness's testimony only affects the weight of the evidence. *People v. Shum,* 117 Ill. 2d 317, 356, 512 N.E.2d 1183, 1198 (1987); *People v. Bell,* 234 Ill. App. 3d 631, 636, 600 N.E.2d 902, 906 (1992). Based upon the victim's testimony that defendant was choking her, over her with his knees, had exposed both her sexual organ and his own sexual organ and was at the same time "trying to stick his thing in," clearly a rational trier of fact could have found the essential elements of aggravated criminal sexual assault, including sexual penetration, *i.e.,* "contact, however slight," beyond a reasonable doubt.

•4 Our supreme court has long held that it is the function of the trier of fact to determine credibility of the witnesses, the weight to be given their testimony, *and the inferences* to be drawn from the evidence. See, *e.g., People v. Bull,* 185 Ill. 2d 179, 204, 705 N.E.2d 824, 837 (1998); *People v. Akis,* 63 Ill. 2d 296, 298, 347 N.E.2d 733, 734 (1976). When weighing the evidence, the trier of fact is not required to disregard the natural inferences that flow normally from the evidence, nor is it required to search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt. *People v. Bull,* 185 Ill. 2d 179, 205, 705 N.E.2d 824, 837 (1998); see also *Camp-*

*bell*, 146 Ill. 2d at 380, 586 N.E.2d at 1268. While it is necessary for the State to prove the elements of an offense beyond a reasonable doubt, that may be done by resort to all the evidence, including the permissive inference. *People v. Housby*, 84 Ill. 2d 415, 421, 420 N.E.2d 151, 154 (1981). The trier of fact is entitled to draw all reasonable inferences from both circumstantial and direct evidence (*People v. Castro*, 113 Ill. App. 3d 265, 269, 446 N.E.2d 1267, 1270 (1983)), *including an inference of penetration. People v. Bell*, 234 Ill. App. 3d 631, 636-37, 600 N.E.2d 902, 907 (1992); see also *People v. Shum*, 117 Ill. 2d 317, 356, 512 N.E.2d 1183, 1198 (1987). Indeed, even where the evidence presented is capable of producing conflicting inferences, the matter is best left to the trier of fact for proper resolution. *People v. Campbell*, 146 Ill. 2d 363, 380, 586 N.E.2d 1261, 1268 (1992). This court will not substitute its judgment for that of the trial court on questions involving such evidentiary inferences. *People v. Gittings*, 136 Ill. App. 3d 655, 660, 483 N.E.2d 553, 558 (1985).

Defendant also argues that it is unreasonable to infer that penetration occurred because the victim never "stated" that any contact actually occurred when describing the circumstances surrounding the second sexual offense that took place in the apartment, as she did when testifying regarding the first, third and fourth sexual offenses. It is true that, while eliciting testimony regarding the first, third and fourth sexual offenses, after the victim testified that defendant "tried to start putting [his penis] in my mouth" (first offense), "tried to put his penis in my vagina" (third offense), and "tried to put [his penis] in my mouth, he put it in my mouth then" (fourth offense), the assistant State's Attorney specifically asked a follow-up question as to whether "contact" was made. In each case, even though the words used by the victim were that he "tried" to put his penis in, she confirmed that in so trying to penetrate either her mouth or vagina, the defendant did indeed make contact. The assistant State's Attorney, however, did not specifically ask if contact was made when eliciting testimony regarding the second sexual offense. Nonetheless, in view of the totality of the testimony, the trier of fact could reasonably infer that when the victim testified that defendant was "trying" to stick his penis in, she, as in the other three times, was describing an attempt at actual penetration whereby defendant was nonetheless making the "contact" required to establish "sexual penetration" as it is legally defined.

Even without the testimony of the other three offenses, the testimony regarding the second sexual offense, standing alone, was sufficient to allow a reasonable inference that the slightest contact between the victim's and defendant's sex organs occurred. Before we discuss that testimony, we wish to point out that the State, in its argu-

ment, overstated the evidence, most notably by implying that the victim testified that defendant was "all over" her, where she actually testified that he was "over" her and with the unfounded statement that as the victim struggled, she "felt" the defendant try to insert his penis in her vagina. There was no such direct, unequivocal testimony regarding contact, despite the State's contention to the contrary in its brief.

According to the victim's testimony regarding the second sexual offense, she was lying face up on the floor and defendant was over her, with his knees on top of her. Defendant, who had previously taken his penis out, had each of his legs on either side of her as he was lying over her. Defendant had pulled the victim's clothes down to below her knees, and as he was on top of her and his knees were on top of her, he had both hands on her mouth and was "trying to stick [his penis] in." From this description, even without direct testimony from the victim that "contact" occurred, the trier of fact could reasonably infer that "contact, however slight," occurred.

With respect to the victim's testimony that defendant was "trying to stick his thing in," the statute "does not require a penetration in this ordinary sense. Only contact is required." *People v. Burmeister*, 147 Ill. App. 3d 218, 222, 497 N.E.2d 1212, 1214 (1986). The reasonable inference, even without an explicit statement from the victim that "contact" occurred, is that in trying to actually penetrate, defendant was making contact. The trier of fact could also reasonably infer that the victim's testimony that "he never did get a chance to do anything [with his penis at that point] meant that actual physical penetration did not occur, but that contact did. As we have already stated, actual physical penetration is not required under the legal definition of "sexual penetration." Given the evidence presented and viewing it in the light most favorable to the prosecution, we find that a rational trier of fact could have found that defendant committed four acts of aggravated criminal sexual assault beyond a reasonable doubt.

●5 With respect to defendant's constitutional argument regarding his sentence based upon the recent decision by the United States Supreme Court, *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), specifically, defendant contends that the trial court's determination that the defendant committed the offenses "as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective" was required to be charged in the indictment and also required to be proved beyond a reasonable doubt.

The State's initial contention is that defendant has waived any

challenge to his sentences because he has never before challenged the imposition of consecutive sentences or otherwise complained that the charging instrument was deficient. Citing *People v. Reed*, 177 Ill. 2d 389, 686 N.E.2d 584 (1997), the State argues that Illinois law is clear that a defendant who wishes to challenge his sentence or any irregularities in the sentencing hearing must first file a timely postsentencing motion in the trial court or the issue will be deemed waived. The State, citing *People v. Thingvold*, 145 Ill. 2d 441, 448, 584 N.E.2d 89 (1991), further contends that a failure to challenge a charging instrument prior to the conclusion of the trial will result in waiver of the issue unless the defendant can prove that he was prejudiced by the deficiency. We note that defendant was sentenced in March 1999, and the United States Supreme Court decided *Apprendi* in June 2000. Under those circumstances, we do not consider defendant's arguments waived. Moreover, a challenge to the constitutionality of a statute may be raised at any time. See *People v. Wright*, 194 Ill. 2d 1, 23, 740 N.E.2d 755, 766 (2000). Indeed, as defendant points out, as a constitutional ruling, the *Apprendi* decision is retroactive to cases pending on direct appeal as well as to collateral proceedings. *Griffith v. Kentucky*, 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708 (1987). We shall address the merits of defendant's argument.

In support of his argument, defendant cites *People v. Waldrup*, 317 Ill. App. 3d 288, 740 N.E.2d 71 (2000), in which the court held that the provisions of the statute mandating consecutive sentencing where a defendant is convicted of aggravated criminal sexual assault were unconstitutional under *Apprendi*. Defendant failed to cite the more recent case of *People v. Maiden*, 318 Ill. App. 3d 545, 743 N.E.2d 1052 (2001), which rejected *Waldrup*.

In any event, *Waldrup* has been abrogated by the recent Illinois Supreme Court cases that have held that *Apprendi* does not apply to consecutive sentences. See *People v. Carney* 196 Ill. 2d 518 (2001); *People v. Wagener*, 196 Ill. 2d 269 (2001).

In accordance with the foregoing, we affirm defendant's conviction and sentence.

Affirmed.

CAMPBELL, P.J., and BUCKLEY, J., concur.