2025 IL App (1st) 231154-U

No. 1-23-1154

Order filed March 25, 2025

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 CR 4586 |
| | ) | |
| BOBBY RAINGE, | ) | Honorable |
| | ) | Angela Munari Petrone, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MCBRIDE delivered the judgment of the court.
Presiding Justice Van Tine and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction for attempted aggravated criminal sexual assault is affirmed where the reasonable inferences drawn from his conduct proved he intended to sexually penetrate the victim's sex organ.

¶ 2    Following a bench trial, defendant Bobby Rainge was found guilty of attempted aggravated criminal sexual assault (720 ILCS 5/8-4, 11-1.30(a)(5) (West 2020)), attempted aggravated criminal sexual abuse (720 ILCS 5/8-4, 11-1.60(a)(3) (West 2020)), and aggravated battery (720 ILCS 5/12-3.05(c), (b)(3)(ii), (d)(7) (West 2020)). The trial court sentenced defendant to an

aggregate 15 years in prison. On appeal, defendant contends that the State failed to prove him guilty beyond a reasonable doubt of attempted aggravated criminal sexual assault because the evidence did not prove he specifically intended to commit any act of sexual penetration. We affirm.

¶ 3    Defendant was charged by indictment with one count of attempted aggravated criminal sexual assault, one count of attempted aggravated criminal sexual abuse, and four counts of aggravated battery. Relevant here, the attempted aggravated criminal sexual assault charge alleged that defendant, with intent to commit an act of sexual penetration, reached his hand up the dress of C.S., who was 60 years of age or older, to her sex organ by the use of force or threat of force.

¶ 4    At trial, C.S. testified that at about 6:45 p.m. on March 8, 2021, she left work and walked to the Chicago Transit Authority (CTA) Illinois Medical District Blue Line train station. She wore a mid-length dress with a round neckline, a leather jacket, a winter coat, and a backpack. At that time, C.S. was the only person on the train platform. Defendant then approached C.S. and stood two or three feet in front of her with his hand extended. He started talking to C.S. Defendant and C.S. wore face masks, making it difficult for C.S. to hear him. She was unsure what he was saying but thought he was asking for money. C.S. repeatedly told him "no" and "no, thank you," but defendant moved closer to her. C.S. then walked around a bench to get away from defendant.

¶ 5    At one point, defendant put his arm around C.S.'s neck and kissed her cheek through his mask. C.S. did not want defendant to kiss her and kept telling him "no" and "stop." Defendant kept trying to grab her, and he put his hand on her chest to grab her breasts over her clothing. Defendant and C.S. "just kept struggling and struggling." She pushed him and told him "no" and to "stop." While they struggled, defendant put his hand underneath the bottom hem of her dress. C.S. testified that defendant "was trying to pull [her] dress up, and [her] assumption was he was

trying to put his hand in between [her] legs." C.S. clenched her legs together and pushed defendant's hand down, yelling "No. No. No." At one point, defendant grabbed C.S.'s left buttock through her clothes while she pushed him and yelled. Defendant pushed C.S. from one end of the platform to the other while they struggled.

¶ 6 After a few minutes, something distracted defendant and he let C.S. go. She ran up the steps of the platform and asked a CTA janitor to call 911 because a "guy tried to rape [her]."

¶ 7 C.S. identified footage of the incident that was captured on CTA surveillance cameras, stating it was an accurate depiction of what occurred on March 8, 2021. She was 61 years old on that day.

¶ 8 Chicago police detective Melissa Rodriguez testified that she was working overnight from March 8 to March 9, 2021. That night, defendant was arrested and brought to the station. Rodriguez advised defendant of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1996), and conducted an electronically recorded interview. Defendant stated that he was riding the Blue Line train and exited at several stops to go to two different hospitals—Stroger and Rush—for back pain. Defendant denied touching anyone. Rodriguez showed defendant a still from the surveillance footage of the train platform at the Illinois Medical District stop, People's Exhibit No. 6, and he identified himself therein.

¶ 9 Chicago police sergeant Melanie Malczewski testified that at about 6:45 p.m. on March 8, 2021, she observed an incident while watching live surveillance footage from the CTA Blue Line stop at the Illinois Medical District. Malczewski saw a man approach a woman, grab her, kiss her, and attempt to "reach into her clothing." Malczewski and her partner then left the police station and toured the area near the train station. Malczewski saw the offender, whom she identified as

defendant, in the lobby of Stroger Hospital. Defendant was wearing the same blue and green jacket with a triangle insignia that Malczewski observed in the surveillance video. Malczewski and her partner entered the hospital, and, as they approached defendant, he walked away from them. Eventually, Malczewski and her partner arrested him.

¶ 10    This court has viewed the videos and photographs admitted into evidence. Relevant here, the CTA surveillance video depicts two different angles of the assault. In one segment, defendant approaches C.S. while she is alone on the train platform and backs away from him. C.S. walks around a bench in the opposite direction from defendant. He then reaches C.S. and wraps his arms around her neck, kissing her face. C.S. and defendant struggle as defendant forcefully tries to grab her and hold her close to his body. At one point, defendant shoves C.S. against a garbage can, pinning her there with his body weight, and grabs her left buttock over her dress. C.S. continues to try to fight defendant off. He continues to pull her body against his, and she locks her legs together for at least 15 seconds. She bends at the waist, tries to push his hand down, and lifts her left leg bent at the knee up to her waist, seemingly trying to block defendant from touching her there as he simultaneously tries to reach up her dress with his hands.

¶ 11    In the video of defendant's interview with Rodriguez, he denies talking to and touching a woman at the Illinois Medical District Blue Line stop. Defendant then states that he may have talked to a woman on the platform because he was trying to buy cigarettes from her.

¶ 12    The trial court found defendant guilty of attempted aggravated criminal sexual assault, attempted aggravated criminal sexual abuse, and aggravated battery. The court found the evidence established that defendant, with the intent to commit aggravated sexual assault and an act of sexual penetration, reached his hand up C.S.'s dress to her sex organ, by the use of force, and C.S. was

60 years of age or older. The trial court explained that defendant's actions indicated his desire for sexual gratification or arousal where he grabbed C.S., kissed her face, put his hands down the front of her clothes between and around her breasts, touched that area over her clothing, and put his hand under the bottom of C.S.'s dress and onto her left buttock over her clothing. C.S. "credibly testified" that she repeatedly pushed defendant away and told him to stop. The trial court found that the CTA surveillance video corroborated C.S.'s testimony in showing her struggling with defendant and clenching her legs together as he "forced himself on her and put his hand under her dress."

¶ 13    Defendant filed a motion to reconsider or, alternatively, for a new trial, which the trial court denied. The court noted C.S.'s "credible testimony" and that the assault was captured virtually in its entirety on "excellent video" from the CTA.

¶ 14    Following a hearing, the court merged the aggravated battery counts and sentenced defendant to concurrent prison sentences of 15 years on attempted aggravated criminal sexual assault, 5 years on attempted aggravated criminal sexual abuse, and 5 years on the merged aggravated battery counts. Defendant made an oral motion to reconsider his sentence, which the court denied.

¶ 15    On appeal, defendant contends that the State failed to prove him guilty beyond a reasonable doubt of attempted aggravated criminal sexual assault because the State did not prove he had the specific intent to commit an act of sexual penetration on C.S. with his hand. Specifically, defendant argues that he made no overt acts directed toward C.S.'s sex organ and no statements evidencing his intent to commit an act of sexual penetration.

¶ 16    Where a defendant challenges the sufficiency of the evidence to sustain his conviction, the question for the reviewing court is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Cline*, 2022 IL 126383, ¶ 25. This standard applies whether the evidence is direct or circumstantial. *People v. Aljohani*, 2022 IL 127037, ¶ 66. Under this standard, all reasonable inferences from the evidence must be allowed in favor of the State. *People v. Lloyd*, 2013 IL 113510, ¶ 42.

¶ 17    The credibility of the witnesses, the weight given to their testimony, the resolution of any conflicts in the evidence, and the reasonable inferences to be drawn from the evidence are within the province of the trier of fact, and a reviewing court will not substitute its judgment for that of the trier of fact on these matters. *People v. Gray*, 2017 IL 120958, ¶ 35. In weighing the evidence, the fact finder is not required to disregard the inferences that naturally flow from that evidence, nor must it search for any possible explanation consistent with innocence and raise it to the level of reasonable doubt. *Cline*, 2022 IL 126383, ¶ 41. A reviewing court may not retry the defendant. *Id.* ¶ 33. Testimony will only be found insufficient where the record "compels the conclusion that no reasonable person could accept it beyond a reasonable doubt." *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). A defendant's conviction will be reversed only if the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *Cline*, 2022 IL 126383, ¶ 25.

¶ 18    A person commits aggravated criminal sexual assault when he commits a criminal sexual assault and an aggravating factor is present. Here, the aggravating factor is that C.S. was 60 years

of age or older. 720 ILCS 5/11-1.30(a)(5) (West 2020). Defendant does not dispute the aggravating factor.

¶ 19    A person commits criminal sexual assault, in pertinent part, when he commits an act of sexual penetration and uses force or threat of force. 720 ILCS 5/11-1.20(a)(1) (West 2020). Under Illinois law, "sexual penetration" includes two categories of conduct: (1) "any contact, however slight, between the sex organ or anus of one person and an object or the sex organ, mouth, or anus of another person" (contact clause), or (2) "any intrusion, however slight, of any part of the body of one person *** into the sex organ or anus of another person" (intrusion clause). 720 ILCS 5/11-0.1 (West 2020); see *People v. Maggette*, 195 Ill. 2d 336, 347 (2001).

¶ 20    An attempt occurs when a person, with intent to commit an offense, "does any act that constitutes a substantial step toward the commission of that offense." 720 ILCS 5/8-4(a) (West 2020). Therefore, to prove defendant guilty of attempted aggravated criminal sexual assault, the State was required to show that he (1) had the intent to commit an act of sexual penetration upon a victim 60 years of age or older, and (2) did any act using force that constituted a substantial step toward the commission of the offense of criminal sexual assault. 720 ILCS 5/8-4(a), 11-1.30(a)(5) (West 2020). Defendant only challenges the element of intent, arguing that the evidence was insufficient to establish his specific intent to sexually penetrate C.S.'s sex organ with his hand.

¶ 21    Intent is a state of mind, which can rarely be proved by direct evidence. *People v. Williams*, 165 Ill. 2d 51, 64 (1995). Rather, intent may be proven through circumstantial evidence that may be inferred from the surrounding circumstances (*People v. Witherspoon*, 379 Ill. App. 3d 298, 307 (2008)), and the character of the defendant's conduct (*People v. Foster*, 168 Ill. 2d 465, 484 (1995)). Circumstantial evidence is the proof of facts and circumstances from which a fact finder

may "infer other connected facts which reasonably and usually follow according to common experience." (Internal quotation marks omitted.) *People v. Smith*, 2014 IL App (1st) 123094, ¶ 13. A conviction may be proven on circumstantial evidence alone. *People v. Murphy*, 2017 IL App (1st) 142092, ¶ 10.

¶ 22 Whether the requisite intent existed is a question for the finder of fact, "whose determination will not be disturbed on review unless a reasonable doubt exists as to the defendant's guilt." *Maggette*, 195 Ill. 2d at 354. The issue of penetration is a question of fact that should be determined by the trier of fact. *People v. Herring*, 324 Ill. App. 3d 458, 464 (2001). The finder of fact may draw all reasonable inferences from both direct and circumstantial evidence, including an inference of penetration. *Id.* at 465.

¶ 23 Viewing the evidence in the light most favorable to the State, a rational trier of fact could have found that defendant intended to penetrate C.S.'s sex organ with his hand. The evidence included C.S.'s credible testimony and the CTA surveillance footage showing that defendant encroached on C.S., struggled with her, pulled her close to his body, forcefully kissed her face, groped the area around her breasts, put his hand under the hem of her dress and tried to reach up her dress, and squeezed her buttock over her clothes, all while C.S. yelled "No" or "Stop." In response to defendant's overt act in reaching up her dress with his hand, C.S. clenched her legs together and kept pushing his hands down in resistance.

¶ 24 A trier of fact is not required to disregard the inferences that naturally flow from the evidence or search out all possible explanations consistent with a defendant's innocence and raise them to a level of reasonable doubt. *Cline*, 2022 IL 126383, ¶ 41. Defendant kissing C.S.'s face, fondling her breasts, and squeezing her buttocks are all acts of a sexual nature. The reasonable

inferences drawn from defendant's conduct in its entirety, viewed in a light most favorable to the State, is that by attempting to force his hand up C.S.'s dress, he intended to touch her sex organ with his hand, supporting the conclusion that defendant intended to commit aggravated criminal sexual assault.

¶ 25 Nonetheless, defendant contends that the evidence of his intent was not sufficient because it rested on C.S.'s "assumption" that he was trying to put his hand in between her legs. However, the evidence of intent did not rest exclusively on her testimony, as the CTA surveillance video of the assault and Detective Malczewski's testimony describing her observation that defendant attempted to "reach into [C.S.'s] clothing" corroborated C.S.'s account. Defendant also contends that he did not make any verbal comments regarding his intent and never attempted to remove C.S.'s clothing, but no such evidence is required to establish intent. See *Witherspoon*, 379 Ill. App. 3d at 307 (intent may be proven through circumstantial evidence).

¶ 26 To determine whether the State proved defendant guilty beyond a reasonable doubt of attempted criminal sexual assault, courts focus on what steps a defendant took toward the commission of the crime, not what steps he did not take but could have. See, *e.g.*, *People v. Hawkins*, 311 Ill. App. 3d 418, 427 (2000). Although defendant contends that the court speculated as to his intent, the trial court had the responsibility to weigh the evidence and was permitted to make reasonable inferences from that evidence. *People v. Simon*, 2011 IL App (1st) 091197, ¶ 52. Here, the evidence of defendant's conduct and the surrounding circumstances permitted the reasonable inference that he intended to criminally sexually assault C.S and took a substantial step toward an act of sexual penetration upon her.

¶ 27    In conclusion, the evidence was sufficient to prove defendant guilty beyond a reasonable doubt of attempted aggravated criminal sexual assault.

¶ 28    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 29    Affirmed.