2019 IL App (1st) 180201-U

No. 1-18-0201

Order filed December 23, 2019

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 18627 |
| | ) | |
| LENNIE PERRY, | ) | Honorable |
| | ) | Lawrence E. Flood, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE PIERCE delivered the judgment of the court.
Presiding Justice Griffin and Justice Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not abuse its discretion when it imposed a nine-year sentence for bribery that was not disproportionate to the nature of the offense.

¶ 2    Following a bench trial, defendant Lennie Perry was found guilty of bribery and official misconduct and sentenced to nine years' imprisonment. On appeal, defendant contends that his sentence was excessive because it was disproportionate to the nature of the offense. We affirm.

¶ 3    Charged with nine counts, defendant ultimately went to trial on two counts of bribery (720 ILCS 5/33-1(d) (West 2014)), two counts of official misconduct (720 ILCS 5/33-3(b) (West 2012)), and two counts of theft (720 ILCS 5/16-1(a)(3)(A) (West 2014)) arising from incidents which occurred in Chicago on September 7 and 19, 2014.

¶ 4    At trial, Denise Howard testified that in the late hours of September 19, 2014, or the early morning hours of September 20, 2014, she drove downtown and parked her vehicle near Columbus and Balbo Drives. Howard paid for a metered parking space and left her vehicle. When she later returned to the parking location, her car was gone and defendant, whom she identified in court, was there outside of his tow truck, which Howard identified as either a yellow or green city tow truck. Howard asked him if he had towed her car. Defendant told her he had not yet taken her vehicle to the pound, and she could get it back if she paid $150 to "the young lady in the white Impala across the street." Howard told defendant she did not have $150 and he responded that the woman in the Impala would take her to the bank to get the money.

¶ 5    Howard did not know the woman and was in "a little bit" of fear for her safety but got into the Impala. The woman drove her to a bank inside a Jewel Osco store, where Howard obtained money from an ATM and a cashier. She gave $150 to the woman, who made a phone call. The woman then drove Howard to a gas station where defendant was waiting, and they followed him to Howard's car on "lower Wacker," a nearby street. Howard did not receive any documentation acknowledging her payment or the release of her vehicle back into her possession.

¶ 6    As Howard drove away in her car, she saw two Chicago police officers near Columbus and Balbo Drives. Howard pulled up to them and, as she explained what happened, the Impala drove by. Howard pointed out the car and the officers pulled it over. Howard identified the driver as the

woman who drove her to the bank, and later identified defendant from a photo lineup. Surveillance video from the Jewel Osco showed Howard in the store, at the ATM, and at the cash register.

¶ 7    Officer Cynthia Nichols testified consistently with Howard regarding her identification of the Impala and the officers pulling it over. Police officers recovered $500 in currency from the woman, subsequently identified as Arica Perry, defendant's wife.

¶ 8    Michelle Yee testified that, in September 2014, she parked her car on the corner of Columbus and Balbo Drives and walked toward Buckingham fountain with her cousin. She heard a siren, turned to look, and saw her vehicle being towed away. Five minutes later, she flagged down a tow truck driven by defendant, whom she identified in court, and asked him how to retrieve her vehicle. He told her he knew where her car was and, if she gave him $200, he might be able to "have them catch" her car "before it's brought in and processed into the tow yard." Yee talked defendant into accepting $100 and paid him. Defendant drove Yee and her cousin to her vehicle, which was on a "side street" with meters and no fencing. Yee did not receive receipt for her payment. When defendant took Yee to her car, he offered to take her to dinner. He gave Yee his name and phone number written down on a piece of paper, which Yee identified in court. The note was written on the back of a Streets and Sanitation Traffic Services Relocation Report. Yee contacted the Office of the Inspector General to report the incident.

¶ 9    Hector Arellano, an investigator with the Office of the Inspector General, investigated Yee's complaint and verified that the phone number the tow truck driver gave her on September 7, 2014, was registered to defendant.

¶ 10    William Higgienbotham, a general superintendent in the Bureau of Traffic Services, supervised the City's motor pool truck drivers. He identified defendant as a former City tow truck

driver and verified that defendant was on duty from 11 p.m. on September 19, 2014, to 6:30 a.m. on September 20, 2014. After securing a vehicle to a tow truck, a driver must proceed without stops or breaks to the auto pound and inventory the vehicle. A vehicle towed from the downtown location of Buckingham Fountain would be towed to the tow yard located at 400 East Wacker Drive. Drivers are not authorized to accept payments from the public and are not allowed to return a vehicle to a driver without police permission.

¶ 11    The trial court found defendant guilty on both counts of bribery and both counts of official misconduct, but not guilty of theft. Defendant filed a motion for a new trial, which the court denied.

¶ 12    The cause proceeded to a sentencing hearing. Defendant's presentence investigative (PSI) report showed that he had six prior convictions. The most recent was for theft in 2007, for which he received two years' probation. In 1997, defendant was convicted of the manufacture and delivery of over 100 grams and less than 400 grams of cocaine and sentenced to 12 years in the Illinois Department of Corrections (IDOC). While incarcerated, he was convicted of possessing alcohol while in a penal institution and possessing cannabis while in a penal institution, and sentenced to two years in IDOC for each offense. In 1993, defendant was convicted of possession of a controlled substance, but violated the probation imposed and was then sentenced to three years IDOC. Also in 1993, defendant was convicted of unlawful use of a weapon (UUW), for which he was sentenced to three years in IDOC. While the instant matter was pending, defendant was arrested and charged with unlawful use of a weapon.

¶ 13    Defendant reported that both his parents had passed away. He had not had a close relationship with his alcoholic father but had had a "good" relationship with his mother, a former Cook County Sheriff. His mother raised him as a single parent, in a neighborhood that was "okay,

but it started getting bad." Defendant completed elementary school, attended high school until the eleventh grade when he was incarcerated, received vocational training while in prison, and attended three months of vocational college in Kentucky. Defendant operated a livery service, a landscaping business, and a trucking business. His longest employment was with the City of Chicago from 2005 through 2014. Defendant filed for bankruptcy in 2014. Defendant was married to Arica Reed Perry, the co-defendant in the case, and reported having three children with her, as well as two children from a prior relationship.[1]

¶ 14    Defendant acknowledged being a member of the Black P Stones gang when he was 15 years old and leaving the gang when he was 21 years old. According to defendant, he had last consumed alcohol one year before the PSI and did not have a problem with alcohol, but the investigator noted defendant had been court ordered to substance abuse treatment as part of previous probationary sentences. Defendant denied any use of illegal or illicit substances.

¶ 15    In aggravation, the State reviewed defendant's criminal background, and noted that he was required to be sentenced as a Class X offender given his prior felony convictions. The State asked the court to consider that defendant's use of his public employee position to obtain money from the victims, "however nominal that amount," constituted public corruption. The State did not recommend a sentence.

¶ 16    In mitigation, defense counsel argued public corruption was already part of "the crime," defendant's five children and wife would benefit from having him with them, defendant had served

---

[1] Reed Perry pled guilty to theft by threat in exchange for a sentence of 24 months of probation, with restitution and fines. She is not a party to this appeal.

his time for his prior convictions, and defendant had not committed a crime of violence. Defense counsel also presented a letter from defendant's pastor in mitigation.

¶ 17    In allocution, defendant stated that when he worked with the City of Chicago from 2005 to 2014, he never had any infractions and did his work as he was ordered to do. Yet he was forced into a department he did not want to be in and received no training. He also stated his family was on the verge of being homeless and he did not want them to "be out there hurting."

¶ 18    The trial court merged the official misconduct counts into the two bribery counts and sentenced defendant as a Class X offender based on his background to concurrent terms of nine years' imprisonment on each bribery count.[2] In so holding, the court stated it considered evidence brought out at trial, defendant's background, and the factors in aggravation and mitigation, and heard defendant's allocution. The court told defendant he had violated his position of trust and responsibility when he solicited money from people in his official capacity as a tow truck driver. It told him, "in your position it's wrong to take money from people to get their car back. You don't need any training to know that that's wrong." The court stated, "it's more than one case," as defendant took money from two people to return vehicles, and, although defendant was eligible for up to 30 years' imprisonment, 9 years was a fair sentence. Defendant did not file a motion to reconsider sentence.

---

[2] The court misspoke at sentencing when it imposed nine-year sentences on bribery counts 1 and 2. (R. 412-14).  It is clear from the record on appeal that the State proceeded to trial on, and the court found defendant guilty of, bribery counts 1 (Howard) and 3 (Yee). Count 2, which was based on a third victim, was nolle prossed. In line with the court's verbal pronouncement, the mittimus reflects sentence was imposed on counts 1 and 2.

¶ 19 On appeal, defendant argues his sentence is excessive because it is disproportionate to the "truly paltry instance of bribery" where only a trivial amount of money was taken. He asks that we reduce his sentence to the six-year minimum term.

¶ 20 As a preliminary issue, the State contends defendant forfeited his claim of sentencing error because he did not file a motion to reconsider his sentence. Generally, both a contemporaneous verbal objection and a written postsentencing motion are required to preserve a sentencing issue for review. *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). Defendant posits that this court can consider the issue as plain error.

¶ 21 The plain error doctrine is a "narrow and limited exception" to the general forfeiture rule. *Id.* at 545. Pursuant to the doctrine, a reviewing court may address forfeited claims when (1) "a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) "where a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." (Internal quotation marks omitted.) *People v. Harvey*, 2018 IL 122325, ¶ 15. However, a defendant must first show that a clear or obvious error occurred to obtain relief under this rule. *Hillier*, 237 Ill. 2d at 545. For the following reasons, we find no error occurred here.

¶ 22 In sentencing, the objective of restoring the offender to useful citizenship must be balanced against the seriousness of the offense. Ill. Const. 1970, art. I, § 11; *People v. Miller*, 202 Ill. 2d 328, 337-38 (2002). The trial court has broad discretionary powers in imposing a sentence (*People v. Stacey*, 193 Ill. 2d 203, 209 (2000)), and is given substantial deference because of its ability to

observe the defendant's credibility, demeanor, moral character, mentality, environment, habits, and age. *People v. Snyder*, 2011 IL 111382, ¶ 36. A sentence is therefore presumed proper when it falls within statutory guidelines (*People v. Knox*, 2014 IL App (1st) 120349, ¶ 46), and will only be disturbed "if the trial court abused its discretion in the sentence it imposed" (*People v. Jones*, 168 Ill. 2d 367, 373-74 (1995)). Sentences which are " 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense' " are considered an abuse of discretion. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010) (quoting *Stacey*, 193 Ill. 2d at 210). However, a reviewing court must not substitute its judgment for that of the trial court merely because it may have weighed the factors differently. *People v. Fern*, 189 Ill. 2d 48, 53 (1999).

¶ 23    Bribery is a Class 2 felony (720 ILCS 5/33-1 (West 2014)) with a sentencing range of 3 to 7 years. 730 ILCS 5/5-4.5-35(a) (West 2014). Here, defendant's criminal history mandates he be sentenced as a Class X offender, with a sentencing range of 6 to 30 years. 730 ILCS 5/5-4.5-95(b) (West 2014). Because defendant's 9-year sentence falls within these statutory guidelines, we must presume it is proper. *Knox*, 2014 IL App (1st) 120349, ¶ 46.

¶ 24    Defendant acknowledges his nine-year sentence is presumptively proper, but maintains that, even in choosing a sentence within the appropriate sentencing range, the court should be "tempered" by the seriousness of the offense, here a non-violent offense involving "nominal" financial misconduct by a "bottom rung" City employee. Defendant urges that the scope of the trust he held in his tow truck driver public employee position was extremely limited. He also maintains that his most serious prior conviction, for Class X drug manufacture or delivery, occurred when he was 23 years old, 16 years prior to the sentencing in this case. Defendant

contends his criminality decreased thereafter, he obtained vocational training, and he was supporting his family through various forms of legal self-employment.

¶ 25 It is defendant's burden to make an affirmative showing that the court did not consider the relevant sentencing factors (*People v. Burton*, 2015 Il App (1st) 131600, ¶ 38), and he does not meet that burden here. In mitigation, the court heard the evidence presented at trial demonstrating the non-violent nature of the offense. It heard the evidence presented at sentencing regarding defendant's prior convictions, his work and family circumstances as set forth in the PSI, and the pastor's letter. It heard defense counsel's argument that defendant's crimes were non-violent and his wife and children would benefit from having him with them. However, it also heard evidence that defendant incurred two of those prior convictions while incarcerated and that he was charged with UUW while the case at bar was pending. It heard evidence that defendant abused his role as a City employee in the commission of the offense and committed the offense twice, days apart, on two separate victims.

¶ 26 Not only did the trial court specifically state it considered all factors in aggravation and mitigation, it is presumed to have taken all the information presented and argument into account and balanced it against other relevant considerations. *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 19. It need not accord more weight to mitigating factors such as defendant's generally non-violent background than to the seriousness of the offense, here defendant's scheme to tow cars, solicit money from the cars' owners for return of their vehicles, and then personally pocket that money, which, as the court noted, he perpetrated against multiple victims. See *People v. Harmon*, 2015 Il App (1st) 122345, ¶ 13. Moreover, defendant had six prior convictions, including for UUW, as well as another UUW charge which he incurred during the pendency of the instant

case. His criminal history alone may "warrant sentences substantially above the minimum." *People v. Evangelista*, 393 Ill. App. 3d 395, 399 (2009), *People v. Hindson*, 301 Ill. App. 3d 466, 475 (1998) ("The seriousness of the offense or the need to protect the public may outweigh mitigating factors and the goal of rehabilitation.") Further, a sentence above the minimum can be warranted to deter other tow truck drivers from committing the same offense. See 730 ILCS 5/5-53.2(a)(7) (West 2014).

¶ 27    Defendant argues his sentence is excessive as his current bribery convictions did not harm Howard and Yee, claiming they paid no more than they would have paid to the City in tow fees and the real "victim" was the City of Chicago, which only suffered the damage of being deprived of "$300 out of the City's coffers." However, defendant did not make the specific argument with regard to the amount of money lost by the City at trial. Defendant also points out that he was sentenced to probation in 2007 for theft of property valued over $10,000 but here his effective theft of $300 was punished by nine years' imprisonment, demonstrating the sentence's excessiveness.

¶ 28    Defendant supports his position by citing to *People v. Busse*, 2016 IL App (1st) 142941, ¶ 30, where this court reduced the sentence of the defendant who was convicted for stealing $44 in loose change from a vending machine in an institution from which he was banned. To the extent defendant is making a comparative sentencing argument, we decline his request, "as our supreme court has rejected an approach that compares sentences between defendants in unrelated cases." *People v. Fern*, 189 Ill. 2d 48, 53 (1999).

¶ 29    Considering the trial court's broad discretionary powers in imposing a sentence, we find that the trial court did not abuse its discretion in fashioning defendant's sentence. *Stacey*, 193 Ill. 2d at 209; *Snyder*, 2011 IL 111382, ¶ 36. As no error occurred, there can be no plain error.

¶ 30    For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 31    Affirmed.